**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ASHER BRONSTIN, on behalf himself and all others similarly situated, | No. 2:26-cv-00970-BHL |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| IXONIA BANK d/b/a NOVUS HOME MORTGAGE, Defendant. | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

RELEVANT ALLEGATIONS ................................................................................................. 4

APPLICABLE LEGAL STANDARDS ................................................................................... 5

ARGUMENT ........................................................................................................................... 6

    I.       Plaintiff Fails to Plausibly Allege a TCPA Liability Theory. ................................... 6

    II.     Plaintiff Fails to Plead Sufficient Facts Supporting Other Elements of His
            Claims. ..................................................................................................................... 17

CONCLUSION ...................................................................................................................... 23

Case 2:26-cv-00970-BHL    Filed 07/23/26    Page 2 of 33    Document 8

# TABLE OF AUTHORITIES

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .........................................................................8, 11

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018).............................................................................7, 13

*Aderhold v. car2go N.A. LLC*,
668 F.App'x 795 (9th Cir. 2016) ...............................................................................................20

*Alexander v. Sandoval*,
121 S.Ct. 1511 (2001) .................................................................................................................23

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ passim

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024).......................................................................11, 15

*Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) .......................................................................................................2

*Bank v. Consumer Tax Advoc., LLC*,
2025 WL 1640500 (E.D.N.Y. Feb. 5, 2025) ..............................................................................8

*Bank v. Philips Elec. No. Amer. Corp.*,
2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) ..........................................................................12

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ..........................................................................12

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) ............................................................... 8, 13, 15

*Beckman v. Chicago Bear Football Club, Inc.*,
2018 WL 1561719 (N.D. Ill. Mar. 30, 2018) ..........................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ passim

*Bell v. Hawx Servs., LLC*,
2025 WL 2533371 (E.D. Cal. Sept. 3, 2025) ..........................................................................18

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024), 2024 WL 2794108 (May 31, 2024) ..........10, 13

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022)........................................................... 3, 7, 9, 14

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010) .......................................................................................................6

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ..................................................................................6

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ..................................................3, 7, 10

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ..................................................................................6

*Canary v. Youngevity Int'l, Inc.*,
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ...........................................................23

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) ............................................................15

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023)................................................. 8, 15, 16

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ............................................................3, 7

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023
WL 11944898 (Nov. 17, 2023) ..........................................................................19, 20

*Dobronski v. Juliasangel Mktg., LLC*,
2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ........................................................22

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ....................................................10, 12

*Dobronski v. Selectquote Ins. Servs.*,
773 F. Supp. 3d 373 (E.D. Mich. 2025)...................................................................23

*Dobronski v. Total Ins. Brokers, LLC*,
2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) ........................................................22

*Dodd v. United States*,
545 U.S. 353 (2005) ............................................................................................21

*Doyle v. GoHealth, LLC*,
2023 WL 3984951 (D.N.J. Mar. 30, 2023)............................................................11, 12

*Drew v. Lexington Consumer Advocacy, LLC*,
2016 WL 1559717 (N.D. Cal. Apr. 18, 2016)...........................................................3, 4

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) .............................................................18

*Facebook, Inc. v. Teachbook.com LLC*,
819 F. Supp. 2d 764 (N.D. Ill. 2011) ........................................................................4

*Fisher v. Alarm.com Holdings, Inc.*,
2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) .............................................................3, 7

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ............................................................9

iii

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ........................................................ 2, 18, 19, 20

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ........................................................18, 20

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017)........................................................2, 7, 18

*Hamilton v. El-Moussa*,
2020 WL 2614625 (C.D. Cal. Feb. 10, 2020) ........................................................ 14

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018) ........................................................ 6

*Herrera v. CarMax Auto Superstores Calif, LLC*,
2014 WL 3398363 (C.D. Cal. July 2, 2014)........................................................ 4

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020)........................................................ 8

*Horton v. Molina Healthcare of Texas, Inc.*,
2026 WL 490216 (N.D. Tex. Feb. 6, 2026), 2026 WL 488753 (Feb. 20, 2026) ..................... 20

*Hulce v. Zipongo Inc.*,
132 F.4th 493 (7th Cir. 2025) ........................................................ 20

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018)........................................................ 17

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
2015 WL 13648356 (W.D. Ark. June 16, 2015)........................................................ 17

*In re Joint Petition
filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)........................................................7, 9, 14

*In re Rules & Regs. Implementing the TCPA*,
21 FCC Rcd. 3787 (Apr. 6, 2006) ........................................................ 20

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015)........................................................1, 9

*Katz v. Caliber Home Loans, Inc.*,
2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) ........................................................ 13

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ........................................................ 15

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
780 F.3d 1101 (11th Cir. 2015)........................................................ 23

*Less v. Quest Diagnostics Inc.*,
2021 WL 266548 (N.D. Ohio Jan. 26, 2021) ........................................................ 20

*Lightfoot v. SelectQuote, Inc.*,
2025 WL 1547495 (N.D. Ill. May 30, 2025)........................................................3, 7

iv

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ...............................................................................12

*Manning v. United States*,
546 F.3d 430 (7th Cir. 2008) .....................................................................................................21

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ............................................................................11

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ................................................................ 8, 13, 16

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)................................................................. 8, 12, 15

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023).................................................................................9

*Meyer v. Cap. All. Grp.*,
2017 WL 5138316 (S.D. Cal. Nov. 6, 2017)............................................................................2, 22

*Moore v. CHW Group*,
2019 WL 3216029 (N.D. Ill., Jul. 17, 2019)........................................................................3, 7, 10

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ............20

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)................................................................. 10, 12, 13

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ...............................................................................7

*Norman v. Northern Ill. Gas Co. Inc.*,
2014 WL 184774 (N.D. Ill. Jan. 16, 2014)................................................................................21

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .............................................................................7

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023)............................................................... passim

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*,
2020 WL 4582689 (N.D. Ohio Aug. 10, 2020)...........................................................................9

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020).................................................................................6

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022) ............................................................................21

*Saunders v. NCO Fin. Sys., Inc.*,
910 F. Supp. 2d 464 (E.D.N.Y. 2012)..........................................................................................2

*Schleifer v. Lexus of Manhattan*,
2019 WL 4640055 (S.D.N.Y. Sept. 24, 2019) .............................................................................4

v

*Scruggs v. CHW Grp., Inc.*,
  2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .................................................................... 11, 13, 17

*Sheski v. Shopify (USA) Inc.*,
  2020 WL 2474421 (N.D. Cal. May 13, 2020) ............................................................................. 7

*Smith v. Direct Building Supplies, LLC*,
  2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ............................................................................ 8, 12

*Smith v. Getmehealthcare, LLC*,
  2025 WL 3771271 (M.D. Fla. Dec. 31, 2025) ........................................................................... 19

*Stachowski v. Town of Cicero*,
  425 F.3d 1075 (7th Cir. 2005) ..................................................................................................... 6

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ....................................................................................................... 5

*Thomas v. Taco Bell Corp.*,
  582 F.App'x 678 (9th Cir. 2014) ................................................................................................. 6

*Warciak v. Subway Rests., Inc.*,
  2019 WL 978666 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020) ....... 3, 7, 8, 16

*Warnick v. Dish Network LLC*,
  301 F.R.D. 551 (D. Colo. 2014) ................................................................................................ 18

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
  2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ...................................................................... 18, 19

*Wick v. Twilio Inc.*,
  2017 WL 2964855 (W.D. Wash. July 12, 2017) ......................................................................... 9

*Wilson v. MEDVIDI Inc.*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ......................................................... 10, 11, 12, 16

*Woodard v. Health Ins. All.*,
  2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ......................................................................... passim

*Worsham v. Travel Options, Inc.*,
  2016 WL 4592373 (D. Md. Sept. 2, 2016) ................................................................................ 22

## STATUTES

47 U.S.C. § 227(c)(3) ...................................................................................................................... 21

47 U.S.C. § 227(c)(5) ................................................................................................................. passim

47 U.S.C. § 227(d) .......................................................................................................................... 22

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c)(2) .......................................................................................................... 19, 21

47 C.F.R. § 64.1200(f)(15) .............................................................................................................. 18

47 C.F.R. § 64.1601(e) .................................................................................................................... 22

https://www.allareacodes.com/202 (last visited July 20, 2026) ....................................................... 4

https://www.allareacodes.com/301 (last visited July 20, 2026) ........................................................ 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ passim

Case 2:26-cv-00970-BHL    Filed 07/23/26    Page 8 of 33    Document 8

Defendant Ixonia Bank d/b/a Novus Home Mortgage ("Novus") hereby respectfully moves to dismiss the putative class action complaint (Dkt. 1, "Complaint") filed by Plaintiff Asher Bronstin ("Plaintiff") in this matter pursuant to Fed. R. Civ. P. 12(b)(6), in its entirety, stating as follows:

## <u>INTRODUCTION</u>

Plaintiff's two-count Complaint seeks relief under the "Do Not Call" ("DNC") provision of the Telephone Consumer Protection Act (the "TCPA"), *i.e.,* 47 U.S.C. § 227(c)(5), and its related implementing regulations. Plaintiff's claims rest squarely on "at least four" calls—three of which he admits he did not answer and one of which was purportedly transferred by an unidentified caller to an unidentified "Novus agent"—that he concludes were made by "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" to his cell phone number, which is supposedly on the National DNC Registry, without his consent. Dkt. 1, ¶¶ 19-29, 63, 65, 70, 72. In other words, Plaintiff contends that either ***Novus and/or countless identified third parties*** possibly placed the subject calls. At its core, however, Plaintiff's Complaint contains no plausible facts beyond Plaintiff's many bald conclusions supporting an inference that Novus is legally responsible for these calls, or that they even violated the TCPA in the first instance. As shown below, such facially deficient allegations cannot survive dismissal in any federal case under Rule 12(b)(6), much less in the TCPA context.

While the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, its remedial purpose does not afford TCPA plaintiffs special pleading deference or give those armed with mere conclusions a free pass to discovery. This is for good reason, as even the FCC as noted that the TCPA has unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" ever since its enactment in 1991. *In re Rules & Regs. Implementing the*

1

*TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Yet, this is unsurprising given the broad financial relief the TCPA affords entrepreneurial plaintiffs (*i.e.*, up to $500 per call, trebled to $1,500 for willful/knowing violations, *see* 47 U.S.C. § 227(c)(5)) and the ease with which facially baseless claims can be brought, styled as class actions, and quickly settled on an individual basis before class certification and trial for far beyond their individual value. And while attorneys' fees are not afforded under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from innocent defendants (like Novus) through the threat of expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). *See also Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (discussing one purpose of the *Iqbal*/*Twombly* pleading standard is to prevent "settlement extortion" and noting plaintiffs can sometimes "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit") (citations omitted).

Thus, given this high potential for abuse by entrepreneurial plaintiffs and their counsel, federal courts have widely recognized that they must dutifully fulfill their critical "gatekeeping" role under the Federal Rules to ensure that TCPA claims have sufficient plausible factual support, before subjecting defendants to the high cost of discovery and trial. As such, district courts across the country, including in this Circuit, routinely dismiss TCPA complaints lacking in such requisite facts at the pleadings stage, while still honoring the statute's intended remedial purpose. Plaintiff's defective Complaint should suffer the same fate and be dismissed for at least the following reasons.

**First**, as one federal district court noted when dismissing a similarly-deficient complaint, the caller's "identity is a ***necessary*** element of ***all***" TCPA claims. *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (emphasis added). Along these lines, it is well

2

established in the Seventh Circuit and nationally that, to successfully plead <u>any</u> TCPA claim under any provision and avoid dismissal under Rule 12(b)(6), all plaintiffs must first "identify" the caller by adequately alleging a theory of liability against the defendant—*i.e.,* direct or vicarious liability.[1] As discussed below, this steadfast rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts, that either Novus: (i) itself, and not a third party, literally took the steps "physically" place each call at issue directly to him, as required to plead direct TCPA liability; or (ii) was in a common law agency relationship with a third party who did physically place the subject calls (the touchstone of which in a TCPA case is having "control" over the "manner and means" of that third party's call campaign), as required to plead vicarious TCPA liability. At the same time, it is equally well-settled that merely parroting the statutory text or case law, taking an equivocating "either/or" approach, and concluding that the "defendant and/or its agents" made the subject calls (as Plaintiff did) is insufficient to plead such theories, without more. In short, TCPA plaintiffs cannot expect to meet the bedrock *Iqbal/Twombly* federal pleading standard by conclusorily alleging that "***someone*** violated the TCPA," but rather must plead enough specific plausible facts to show there is a valid theory under which the specific defendant in the case could be liable. *See Drew v. Lexington Consumer Advocacy, LLC*, 2016 WL 1559717, at *8 (N.D. Cal. Apr. 18, 2016) (emphasis original). As Plaintiff failed to do so in this case, his entire Complaint is doomed to dismissal on these grounds.

**Second**, beyond the threshold defect above, the Complaint is further ripe for dismissal in its entirety because Plaintiff failed to sufficiently plead, *inter alia*, that: (i) he received an actionable

---

[1] *See, e.g., Warciak v. Subway Rests., Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *Lightfoot v. SelectQuote, Inc.*, 2025 WL 1547495, at *3 (N.D. Ill. May 30, 2025); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (citing *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) and *Moore v. CHW Group*, 2019 WL 3216029, at *2 (N.D. Ill., Jul. 17, 2019)); *Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022); *Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2018 WL 835222, at *5-6 (N.D. Ill. Feb. 13, 2018); *Fisher v. Alarm.com Holdings, Inc.,* 2018 WL 5717579, at *3-4 (N.D. Ill. Nov. 1, 2018) (each dismissing on one or both of these grounds).

"telephone solicitation" as defined by the TCPA's implementing DNC regulations; or (ii) he himself registered the subject phone number on the National Registry, as the plain language of the statutory text requires. His naked conclusions on these points also do not pass muster under *Iqbal/Twombly*.

**Third**, Count II of the Complaint fails for the additional reason that there is no private cause of action under the TCPA's Caller ID technical regulations that Plaintiff has invoked here.

**Fourth**, Plaintiff pleads no facts suggesting there has been a "knowing" or "willful" violation, entitling him to treble damages. Those allegations should be dismissed at the minimum.

## RELEVANT ALLEGATIONS

In pertinent part, the Complaint concludes that "Plaintiff received at least four telephone calls from Defendant." Dkt. 1, ¶ 21. Plaintiff claims these calls were made without his consent to his cellular phone number with a 202 (*i.e.,* Washington D.C.) [2] area code, which supposedly "is a non-commercial telephone number not associated with any business" that he "uses … for personal, residential, and household purposes only." *Id*. ¶¶ 16-17, 20. Plaintiff further claims that the phone "number has been registered with the National Do Not Call Registry since November 4, 2021" but does not state *who* registered it on the Registry (*i.e*., if it was himself or someone else). *Id*. ¶ 19.

The Complaint provides even less detail about the subject calls, and offers no plausible facts tying them to Novus. For example, Plaintiff claims that "[a]ll of the calls came from caller ID 301-477-0268"—which is also a Washington D.C. area code,[3] even though he also alleges that Novus is based in Wisconsin. *Id*. ¶¶ 7, 23. He suggests that all of these "calls were meant for someone other

---

[2] *See* https://www.allareacodes.com/202 (last visited July 20, 2026). *See also Facebook, Inc. v. Teachbook.com LLC,* 819 F. Supp. 2d 764, 771 (N.D. Ill. 2011) ("Matters of public record" are properly subject to judicial notice under Rule 12(b)(6)); *Herrera v. CarMax Auto Superstores Calif, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) ("It is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan,* 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking notice of area codes).

[3] *See* https://www.allareacodes.com/301 (last visited July 20, 2026).

than Plaintiff," even though he claims he "missed" (*i.e.*, did not answer) three of them. *Id*. ¶¶ 22, 24. As to the remaining call, he claims that, "[o]n December 10, 2024, Plaintiff received a final call from Defendant and answered the call," but yet he does not identify the caller or allege that the caller identified Novus in any way. *Id*. ¶¶ 25, 26. Rather, Plaintiff claims that, on this fourth call: (i) he "spoke with an agent who stated she was calling to sell a mortgage and was looking for 'Wayne Howard'"; and (ii) instead of hanging up or stating that the caller had dialed a wrong number, he "was then connected" (*i.e.*, transferred) "to a different agent from Novus Home Mortgage" by the initial unidentified caller, who in turn also "tried to sell Plaintiff a mortgage"—as opposed to a Novus-specific mortgage. *Id*. ¶¶ 25-28. Plaintiff also vaguely claims that he "subsequently received follow up emails" at some point from the unidentified "Novus agent" to whom he had been transferred, which somehow "confirmed that the Defendant had been the one who called him." *Id*. ¶ 29. Yet, Plaintiff does not attach these supposed emails to the Complaint or quote any of the content.

As discussed below, these speculative and conclusory allegations are woefully insufficient to withstand dismissal under federal pleading standards and the applicable TCPA authorities below.

**<u>APPLICABLE LEGAL STANDARDS</u>**

A "bare assertion" and "conclusory allegation[s]" will not suffice to avoid dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotations omitted). A "formulaic recitation of the elements" of a claim likewise fails to meet the requisite federal pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also id*. (all federal pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("It is by now well established that a plaintiff must do better than putting a few words on paper that, in the

5

hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law."). The Seventh Circuit has thus interpreted the holdings in *Twombly* and "*Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading…, rather than providing some ***specific facts*** to ground those legal claims[.] [Such plaintiffs] ***must do more***." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added).

In short, "[t]o survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 736 (7th Cir. 2014)). And while this Court must generally accept well-pled factual allegations as true under Rule 12(b)(6), conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions couched as fact need <u>not</u> be taken as true. *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 465 (7th Cir. 2010); *Stachowski v. Town of Cicero,* 425 F.3d 1075, 1078 (7th Cir. 2005); *Iqbal*, 556 U.S. at 678–79.

<u>ARGUMENT</u>

**I.** <u>**Plaintiff Fails to Plausibly Allege a TCPA Liability Theory.**</u>

As a threshold matter, Plaintiff's entire Complaint is subject to dismissal because Plaintiff failed to plausibly allege a theory of liability under the TCPA against Novus.

Again, there are "two potential theories of liability under the TCPA" that must be adequately pled in accordance with federal pleading standards in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). In this regard, it is well settled that "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship

6

with the person who made the call"—and of course, there must be actual *facts* pled supporting such theories. *Pascal v. Agentra, LLC,* 2019 WL 5212961, at \*2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at \*4 (N.D. Cal. Jan. 4, 2018)). Courts in the Seventh Circuit have firmly adopted this rule. *See, e.g., Warciak*, 2019 WL 978666, at \*2; *Lightfoot*, 2025 WL 1547495, at \*3; *Woodard,* 2024 WL 942629, at \*2-3 (citing *Brownlee,* 2021 WL 4306160, at \*1–2 and *Moore,* 2019 WL 3216029, at \*2); *Bennett,* 2022 WL 865837, at \*3; *Cunningham,* 2018 WL 835222, at \*5-6; *Fisher,* 2018 WL 5717579, at \*3-4 (each dismissing).

Further, failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u> under Rule 12(b)(6), regardless of whether facts were pled supporting other elements of the asserted claim. *See, e.g., id.*; *see also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at \*9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the ***first elements*** of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.) (emphasis added); *Gulden*, 2017 WL 3841491, at \*3 (ruling similarly); *Brownlee,* 2021 WL 4306160, at \*1 (dismissing and holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for ***each call***" at issue) (emphasis added). Here, Plaintiff's Complaint fails to plausibly allege either theory.

As to the former theory, federal courts across the country have uniformly recognized that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "physically place" each call at issue directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (discussing accepted standards for sufficiently pleading TCPA liability theories and dismissing);

*Warciak*, 2019 WL 978666, at *2 (dismissing, in part, on this basis because the plaintiff did not sufficiently allege defendant "physically sent out the text messages at issue").[4]

In other words, for direct TCPA liability, the defendant itself must literally pick up the phone and physically call the plaintiff directly. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing claim brought by some of the same counsel representing Plaintiff on this basis where the plaintiffs did not plausibly allege the "[d]efendant itself" physically made the calls at issue); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing on this basis, holding: "At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls."). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019) (dismissing on this basis where the "plaintiff's allegations d[id] not show plausibly that [the defendant itself] actually, physically initiated the telephone calls at issue"); *Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis where "none of [the plaintiff's] factual allegations" in the complaint at bar, "even if accepted as true, establish[ed] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a phone call directly to the plaintiff); *Bank v. Consumer Tax Advoc., LLC,* 2025 WL 1640500, at *7–8 (E.D.N.Y. Feb. 5, 2025) (dismissing on this basis where there was "no direct allegation [pled] that [the defendant] was the entity that actually [*i.e.*, physically] initiated the call" at issue); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing on this basis and ruling similarly).

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear majority rule.

8

Conversely, direct TCPA liability cannot be based on calls made by third parties and thus "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett,* 2022 WL 865837, at *3 (dismissing on this basis, holding "a [TCPA] defendant 'generally does not initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"). Similarly, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) ("Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken."). Instead, both logically and as a matter of established federal law, there must be a "direct connection between a person or entity and the making of a call" for <u>direct</u> TCPA liability to attach. 30 FCC Rcd. at 7980.

To meet federal pleading requirements in this regard, however, courts have consistently found that "[m]erely alleging that [a defendant and/or an agent] 'made' or 'initiated' [a] call" in a conclusory fashion, as Plaintiff did here, "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding that TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal at the pleadings stage); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing TCPA claim on this basis, where the plaintiffs merely concluded that one defendant "physically" placed the

9

subject calls, noting that the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

Countless other district courts, in this Circuit and elsewhere, have ruled similarly and thus have often dismissed such faulty TCPA claims on this basis under Rule 12(b)(6). *See, e.g., Woodard,* 2024 WL 942629, at *3 (dismissing TCPA case brought by some of the same counsel representing Plaintiff, and holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal.") (citing, *inter alia, Brownlee* and *Moore*); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing TCPA case brought by some of the same counsel representing Plaintiff on this basis, and holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent."); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls, without additional factual enhancement); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing and holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though the plaintiff was somehow "informed" by the alleged caller that "the [subject] call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls" in the

complaint); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing and holding that the plaintiff's allegations that the alleged calls were "from Defendant, its employees and/or agents" were insufficient to plead a TCPA liability theory). So should this Court in this case.

In short, "simply asserting a purported fact" as to a caller's identity, as Plaintiff has attempted to do here, "does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim on this basis). Rather, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is legally required] to provide greater detail'" without discovery to plausibly allege a direct TCPA liability theory under the *Iqbal*/*Twombly* standard. *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing for failing to plead a TCPA liability theory).

Applying these firmly-rooted principles, Plaintiff failed to plead sufficient facts supporting a plausible inference that Novus itself (as opposed to some third party) physically placed each of the subject calls to him, as is required to adequately plead a direct TCPA liability theory. Indeed, Plaintiff's Complaint is notable more for the facts it omits on this front, rather than the few (if any) facts it does contain. For example, Plaintiff's Complaint does not allege (nor even state in a conclusory fashion), *inter alia*, that: (i) Novus owns or uses the Washington D.C. area code phone number purportedly used to place the calls; (ii) he called that number back and reached Novus; (iii) Novus' name appeared on his Caller ID (in fact, he claims that no name appeared); or (iv) the initial unidentified caller or the person to whom he was transferred by the initial caller identified themselves as Novus "employees"—all of which are facts that ***could*** possibly support an inference of direct TCPA liability in ***some*** cases, if properly pled, as other courts have held. *See, e.g., Matthews,* 2025 WL 1181789, at *3; *Wilson,* 2025 WL 2856295, at *4; *Aaronson*, 2019 WL 8953349, at *2-3; *Rogers*,

11

2023 WL 2646468, at *5; *Doyle*, 2023 WL 3984951, at *4-6; *Smith,* 2021 WL 4623275, at *3-4; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019) (each dismissing where complaints lacked such critical contextual details about the subject calls). The omission of such easily-pled facts in this case is fatal to Plaintiff's Complaint direct TCPA liability grounds.

Instead, Plaintiff has merely adopted a classic "either/or" approach that countless federal courts have firmly rejected as insufficient to plausibly allege any TCPA liability theory. This Court should too. Indeed, Plaintiff repeatedly avers, with zero factual support, that "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" placed the subject calls, or the like. Dkt. 1, ¶ 63; *see also id.* ¶¶ 46, 65, 66, 70, 72 (reflecting nearly identical or substantially similar allegations referring to Novus and/or third parties). In other words, Plaintiff contends either Novus and/or countless unidentified third parties placed these calls. Yet, courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of any sort." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is particularly true when it comes to properly pleading TCPA liability theories, as the many directly on-point authorities cited above dismissing on this basis show. *See, e.g., Dobronski*, *Murray*, *Wilson*, *Woodard*, and *Doyle*, *supra*; *Melito*, 2015 WL 7736547, at *4 (dismissing and holding that "Plaintiffs' conclusory assertions that [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement."); *Bank v. Philips Elec. No. Amer. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (plaintiff's allegations the subject calls "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible [TCPA] claim").

That Plaintiff conclusorily alleges that he was later "connected" (*i.e.*, transferred) by the initial unidentified caller to someone else, who he concludes was a "Novus agent" and "tried to sell

12

'[him] a mortgage" as opposed to a Novus-specific mortgage (*see* Dkt. 1, ¶¶ 27-28) does not move the proverbial needle on his claims from "possible" to "plausible" either for several reasons.

Firstly, myriad courts have correctly recognized that even a call allegedly offering the defendant's products, identifying the defendant by name, or providing the defendant's contact information does not, standing alone, allow for a plausible inference that the defendant <u>itself</u> (as opposed to a third party) physically made a phone call directly to the plaintiff for direct TCPA liability purposes. *See*, *e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (finding no direct liability, even though at-issue text identified defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller said they were calling "from" the defendant and provided its website, where plaintiff alleged "in conclusory fashion that Defendant was directly involved in making" the calls); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Abante Rooter,* 2018 WL 288055, at *4 (dismissing on this basis where the complaint contained only conclusory allegations that callers represented they "were calling 'on behalf of Defendant'" and "allegations that baldly assert the caller was a representative of defendant" without additional factual enhancement); *Murray*, 2015 WL 4204398, at *2 (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Scruggs*, 2020 WL 9348208, at *6-10 (dismissing on this basis, calls from someone who stated they were "associated with" the defendant deemed insufficient).

13

Plaintiff's vague conclusion about follow up emails from the supposed "Novus agent" to whom he was transferred are likewise of no moment on this front. *See, e.g., Hamilton v. El-Moussa,* 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (dismissing on this basis, holding that alleged follow up email to plaintiff from defendant received after the at-issue call was insufficient to plausibly allege direct liability). Together, the foregoing well-reasoned authorities show the alleged content of a call alone is not dispositive of direct liability, and more factual enhancement is required.

This widely-accepted analytical approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) reflects a proper application of the *Iqbal/Twombly* pleading standard in TCPA cases and is in recognition that today companies often hire third parties to handle their outbound communications. *See, e.g., Bennett,* 2022 WL 865837, at *3 ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). Indeed, a call made by a third party vendor on behalf of the defendant would naturally identify the defendant or its products by name, which is the whole point of hiring a vendor. But that call would not have been <u>physically</u> placed by the defendant <u>itself</u> directly to the plaintiff, which is what matters on this issue. Again, both logically and as a matter of settled federal law, a defendant's possible indirect connection to a call placed by a third party is simply not "direct" TCPA liability for the defendant. *See* 28 FCC Rcd. at 6583.

Moreover, that Plaintiff was later "connected"—*i.e.,* transferred—to someone else that Plaintiff concludes was a "Novus agent" by the initial unidentified caller belies any reasonable inference of direct TCPA liability for that one call or any others. In fact, it is well accepted that transferring a call ***to*** the defendant is not the functional equivalent of the defendant itself physically placing a call directly to the plaintiff as required for direct TCPA liability to attach—and rather that it is the defendant who is ***receiving*** the call in such cases—as numerous courts have found. *See, e.g.,*

14

*Cunningham*, 2023 WL 3985245, at *2 (dismissing on direct liability grounds where plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding that such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted). *See also Bank*, 2024 WL 1332635, at *4; *Barnes,* 2023 WL 2592371, at *3; *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018) (each dismissing TCPA claims on direct liability grounds where the initial calls were allegedly transferred to the defendant by an unidentified caller).

At bottom, the Complaint at bar conclusorily alleges, without requisite factual support, that Plaintiff: (i) received four calls originated from a Washington D.C. number (where Novus is not based); (ii) answered only one and spoke with an unidentified caller who did not mention Novus; (iii) was later transferred to another unidentified person that he characterizes as a "Novus agent"; and (iv) received non-descript "follow up" emails at some point from that person that somehow "confirmed that Defendant had been the one who called him." Dkt. 1, ¶¶ 21-29. Based on these vague allegations, Plaintiff concludes that the "foregoing acts and omissions of Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf, constitute numerous and multiple violations of the TCPA…." *Id*., ¶ 63. However, "none of [these or other] factual allegations" in his Complaint, "even if accepted as true, establish direct liability on [Novus'] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a phone call directly to Plaintiff. *Melito,* 2015 WL 7736547, at *4. And it is widely accepted that "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" on direct liability grounds. *Woodard,* 2024 WL 942629, at *3. Plaintiff plainly did not do so here.

To the extent that Plaintiff attempts to allege a plausible vicarious TCPA liability theory instead, he fares no better. As noted above, federal courts apply common law agency principles to determine vicarious liability under the TCPA. *See, e.g., Warciak*, 949 F.3d at 354-357 (discussing applicable agency principles in the TCPA context). Here, though, despite including legal buzzwords (*e.g.,* "agents") suggestive of possible third party involvement, Plaintiff does not assert any plausible factual allegations supporting an inference that Novus was in a common law agency relationship with any third party that called him, as required to plead vicarious TCPA liability. *See, e.g., Wilson*, 2025 WL 2856295, at *4 ( "[W]hile alleging that 'Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA,' [], the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such 'unadorned labels' are insufficient as a matter of law to allege any agency relationship.") (internal citations omitted). Nor does Plaintiff allege Novus had specific "control" over the "manner and means" of any third party's call campaign—*i.e.,* literally who to call, when, how, the content, etc.—which is the accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled to avoid a dismissal on this basis. *See, e.g., Warciak*, 2019 WL 978666, at *2-3; *Cunningham*, 2023 WL 3985245, at *2; *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6.

Lastly, perhaps the "death knell" to Plaintiff's efforts to state any plausible TCPA liability theory here is that he incredibly suggests in his pleading that he needs "discovery" to properly do so. *See* Dkt. 1, ¶ 63. The Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. And in this context:

> As master[s] of [their] Complaint, it is [a TCPA plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). *See also Beckman v. Chicago Bear Football Club, Inc.*, 2018 WL 1561719, at *7 (N.D. Ill. Mar. 30, 2018) ("The complaint must still state a plausible claim to unlock the door to discovery."). Put in context of this case, Plaintiff's pled suggestions in his Complaint that he "needs discovery to confirm who called him and how that person is related to" Novus reveals that he is merely "on an impermissible fishing expedition" and is not pleading actual facts in accordance with *Iqbal*/*Twombly*; and it further confirms that he actually does "not know who called" him and thus that he has not adequately pled <u>any</u> TCPA liability theory against Novus in this case, as required. *Scruggs*, 2020 WL 9348208, at *6–7, 10 (dismissing TCPA complaint on these bases).

\* \* \*

All told, Plaintiff's failure to properly allege a plausible direct or vicarious TCPA liability theory in this case is not some minor pleading defect to be sorted out in discovery. Rather, as shown above, this is a critical legal distinction that myriad courts have found must first be properly pled in every case before subjecting defendants to discovery, liability, and potential statutory damages—all of which can be costly and potentially ruinous, especially in class actions like this. As Plaintiff failed to do so here, his entire Complaint should be dismissed under Rule 12(b)(6) on these grounds alone.

## II. **Plaintiff Fails to Plead Sufficient Facts Supporting Other Elements of His Claims.**

Both of Plaintiff's pled counts purport to bring claims under Section 227(c) of the TCPA. As discussed below, Plaintiff failed to plead sufficient non-conclusory facts supporting essential elements of such claims in several key ways, further warranting his Complaint's total dismissal.

17

**First**, it is well-settled that Section 227(c) of the TCPA, on its face, applies only "to telemarketing and solicitation calls," as opposed to all supposedly "unwanted" calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Therefore, to adequately state a claim and avoid dismissal, Plaintiff must also properly plead facts suggesting his receipt of an actionable "telephone solicitation" as defined by the TCPA's implementing DNC regulations. *See* 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission.").

To meet federal pleading standards in this regard, though, "[c]all recipients must do more than" baldly conclude "the calls in question were telephone solicitations" to plead this essential element of a Section 227(c) claim. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). In other words, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question, he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him to make a purchase of its products, to avoid a dismissal on this basis. *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Instead, "'further factual enhancement'" is needed to plead this essential element and survive dismissal. *Gulden,* 2017 WL 3841491, at *3 (quoting *Twombly*, 550 U.S. at 557). Federal district courts across the country have, therefore, consistently dismissed DNC claims at the pleadings stage where the plaintiff merely relies on conclusory labels like "advertisement" or "solicitation" but omits additional factual enhancement. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing *Gulden*, 2017 WL 3841491, at *3, *Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb.

18

5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898, at *1 (Nov. 17, 2023); *Weingrad*, 2024 WL 4228149, at *4. So should this Court in this instance.

As applied here, Plaintiff offers no plausible allegations, beyond his conclusory labels, about the content of any of the subject calls from which this Court could reasonably infer that they each meet the statutory definition of a "telephone solicitation" above. *See, e.g.,* Dkt. 1, ¶ 26 ("Plaintiff spoke with an agent who stated she was calling to sell a mortgage and was looking for 'Wayne Howard.'"); ¶ 29 ("The agent tried to sell Plaintiff a mortgage."); ¶ 34 ("The calls were made for the purpose of encouraging the purchase of Defendant's mortgage lending services"). Courts have found such allegations are insufficient to survive dismissal on this basis without additional factual enhancement. *See, e.g., Gillam,* 2023 WL 2163775, at *3 (dismissing on this basis where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Weingrad,* 2024 WL 4228149, at *3–4 (dismissing DNC claim where, as here, plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards); *Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing DNC claim on this basis where the complaint failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation").

And even assuming *arguendo* Plaintiff's conclusory allegations about the one call he answered were enough to demonstrate that it qualified as a "telephone solicitation" as defined by the TCPA (and they are not), the DNC rules require ***more than one*** violative telephone call in a 12-month period. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Because Plaintiff did not

answer the other three calls, he cannot allege with any factual support that they qualified as telephone solicitations; and only one such call will not support a claim. *See, e.g., Gillam,* 2023 WL 2163775, at *3 (dismissing where plaintiff failed to allege the content of the other calls he did not answer that would allow the court to reasonably infer that these other calls were solicitations meeting the TCPA's statutory definition); *Greene,* 2021 WL 4926495, at *5 (ruling similarly).[5]

Moreover, while he only answered one call, Plaintiff concludes that all the subject communications were "meant for someone other than Plaintiff" named "Wayne Howard," and thus that ***he*** was not being solicited. Dkt. 1, ¶¶ 22, 26. Courts have found such communications are <u>not</u> "telephone solicitations" fitting the TCPA's statutory definition above. *See, e.g., Dahdah*, 2023 WL 5941730, at *3 (dismissing on this basis where, like here, the subject communications were "looking to speak with someone other than" the plaintiff); *see also Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ("Because neither of the [subject communications] encouraged [the named plaintiff] to purchase, rent, or invest

---

[5] Unlike for direct or vicarious liability, call content is a key aspect of determining its "purpose" for a DNC claim at this stage; without it, the Court cannot make such an inference. Businesses routinely place all sorts of non-solicitation calls, including customer-service, informational, administrative, or account-related communications, that do not violate the TCPA. *See, e.g., Aderhold v. car2go N.A. LLC*, 668 F.App'x 795, 796 (9th Cir. 2016) (message relating to an ongoing transaction not a telephone solicitation) (citing *In re Rules & Regs. Implementing the TCPA*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)); *Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1–2 (N.D. Ohio Jan. 26, 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA].")). That is why the TCPA requires courts to examine the content to determine the "purpose" of the particular call at issue. *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025) (holding that, although the communications at issue encouraged the plaintiff to ***utilize*** the defendant's free services, they were not "telephone solicitations" and were not a violation because the plaintiff was not "encouraged" to ***pay*** for them). And, of course, there must be plausible factual allegations as to this purpose, not bald conclusions or regurgitations of the statutory text, to pass muster under *Iqbal*/*Twombly*. The latter is all Plaintiff offers in this case.

in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. Northern Ill. Gas Co. Inc.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege the defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party). Therefore, Plaintiff's entire Complaint should be dismissed on this additional basis.

**Second**, as to Count I, the TCPA's implementing regulations expressly prohibit initiating telephone solicitations to a "residential telephone subscriber *who has registered his or her telephone number*" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As other courts have found, a plain reading of the unambiguous language of this regulation[6] requires Plaintiff here to plausibly allege that he *himself* registered the phone number on which he allegedly received the subject calls on the National DNC Registry. *See, e.g., Rogers,* 2023 WL 2646468, at *4 (dismissing DNC claim, in part, for this reason); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing this issue, dismissing DNC claim *with prejudice* on this basis, and holding the "plain [statutory] language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"). That plain reading of this regulation is logical and harmonizes it with the statutory language in which Congress authorized the creation of a registry of "*residential subscribers who object* to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added).

As applied here, Plaintiff does not indicate *who* registered the phone number upon which he received the at-issue communications, and only that it "has been registered" since 2021. *See* Dkt. 1, ¶ 19. This inartful pleading suggests that the number "could have been registered by previous owners

---

[6] Of course, it is axiomatic that "[c]ourts must apply a statute *as written* when the language is plain and unambiguous" (as is the case here) and cannot rewrite them. *Manning v. U.S.*, 546 F.3d 430, 433 (7th Cir. 2008) (citing *Dodd v. United States,* 545 U.S. 353, 359 (2005)) (emphasis added).

of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [his] own number[] on the DNC list[.]" *Id*. Count I fails for this additional reason.

**Third**, for Count II, Plaintiff invokes 47 C.F.R. § 64.1601(e) of the TCPA's technical implementing regulations, which relate to Caller ID requirements. But since Plaintiff does not plead facts connecting Novus to the subject calls or the phone number from which they purportedly originated, as discussed above, he has not plausibly alleged Novus is responsible for such a violation.

Moreover, while it appears district courts in this Circuit have not yet considered the issue, most others have thoroughly analyzed the statute and dismissed claims based Section 64.1601(e) because those regulations ***do not afford consumers a private cause of action***. *See, e.g., Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021); *Meyer v. Cap. All. Grp.,* 2017 WL 5138316, at *15 (S.D. Cal. Nov. 6, 2017) (same); *Worsham v. Travel Options, Inc.,* 2016 WL 4592373, at *3-4 (D. Md. Sept. 2, 2016). As the *Worsham* court correctly concluded, "[a]ny violation of § 64.1601(e) is a violation of technical and procedural standards" under 47 U.S.C. § 227(d) and "no private right of action exists under [that] subsection of the TCPA." *Id*. at *7 (collecting cases). And while Novus acknowledges that certain district courts have concluded otherwise, "[t]he majority of courts have held that § 64.1601(e) was promulgated under 47 U.S.C. § 227(d), which does not include a private right of action" for consumers. *Dobronski v. Juliasangel Mktg., LLC*, 2025 WL 2659265, at *9-11 (E.D. Mich. Sept. 17, 2025). This Court should join the majority.

Novus respectfully submits the majority of cases concluding there is no private right of action available under Section 64.1601(e), where courts have done a thorough analysis of the statutory text and its history, are more persuasive and more in keeping with the principle that courts

should be reluctant to find a statutory private right of action in the absence of clear Congressional intent to create one. *See, e.g., Alexander v. Sandoval*, 121 S.Ct. 1511, 1520 (2001) ("Without [evidence of Congress's intent to create a private right of action], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). This Court should rule similarly in the present case, and thus dismiss Plaintiff's Count II under Rule 12(b)(6) *with prejudice* given this incurable legal defect, as well.[7]

**Finally**, Plaintiff concludes that any violation as to his claims in Counts I and II was necessarily "knowing" or "willful" entitling him to treble damages (*see* Dkt. 1, ¶¶ 64, 71), but he pleads no supporting facts. Those allegations should thus be dismissed, at the minimum. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for willful/knowing violations that "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true.").

## CONCLUSION

For all of the reasons stated above, and for such further reasons as may be presented to the Court, Plaintiff's entire Complaint should be dismissed under Rule 12(b)(6).[8]

---

[7] Anticipating this argument, the Complaint cites to "*Dobronski v. Selectquote Ins. Servs.,* No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025)" (Dkt. 1, ¶ 14), which is a summary judgment decision where the court expressly noted that it was **ruling against the majority of courts on this issue**. *See Dobronski v. Selectquote Ins. Servs*., 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025).

[8] Novus has not yet determined whether Plaintiff's claims are subject to an arbitration agreement between the parties and, therefore, submits this Motion to comply with its immediate obligations to respond to the Complaint under Rule 12(b). Should Novus make such a determination through discovery, Novus will promptly move to compel arbitration. This Motion should not be viewed as a waiver of Novus' arbitral rights, or as a concession that Plaintiff has standing or as to venue.

Dated: July 23, 2026

Respectfully Submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ A. Paul Heeringa*

John W. McGuinness*
A. Paul Heeringa
151 N. Franklin St., Ste. 2600
Chicago, IL 60606
Tel: 312.529.6300
pheeringa@manatt.com

Samantha J. Katze
7 Times Square
New York, NY 10036
Tel: 212.790.4579
skatze@manatt.com

*Counsel for Defendant*

*\*Admission to be requested*

24

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document (including any attached exhibits and documents) to be filed electronically on the Court's CM/ECF docket on July 23, 2026 which served same electronically upon all counsel of record.

By: */s/ A. Paul Heeringa*

25