## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ASHER BRONSTIN,                          )
*on behalf of himself and*               )         Civil Action No.: 2:26-cv-00970
*others similarly situated*,             )
                                         )
      Plaintiff,    )
                                         )         Jury Trial Demanded
v.                                       )
                                         )
IXONIA BANK d/b/a NOVUS HOME             )
MORTGAGE                                 )
                                         )
      Defendant.    )
                                         )
_____  )

## **PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff's Complaint alleges a straightforward telemarketing campaign. Defendant called Plaintiff's residential telephone number on at least four occasions from the same telephone number. When Plaintiff answered the final call, he was immediately solicited for a mortgage, spoke to a Novus Home Mortgage representative with a sales pitch, and thereafter received follow-up emails from Defendant concerning the solicitation. Accepting those allegations as true—as the Court must on a Rule 12(b)(6) motion—the Complaint easily states claims under the Telephone Consumer Protection Act. Rather than applying the governing pleading standard, Defendant repeatedly asks the Court to resolve factual disputes and draw inferences in Defendant's favor. It also advances several legal arguments that have been rejected by the overwhelming majority of courts to consider them, including its arguments concerning the Caller ID regulation and personal registration on the National Do Not Call Registry.

Because Plaintiff plausibly alleges that Defendant initiated multiple telephone solicitations to Plaintiff's residential telephone number, that Defendant violated the TCPA's Caller ID regulations, and that Defendant's remaining arguments have been repeatedly rejected by federal courts, the Motion should be denied

## BACKGROUND

Plaintiff alleges that Defendant initiated at least four telemarketing calls to Plaintiff's residential telephone number between October and December 2024. ECF No. 1 ¶¶ 21–25. Each call originated from the same telephone number. *Id.* Plaintiff answered the final call on December 10, 2024, at which time the caller stated that she was calling to sell a mortgage and he spoke to a Novus Home Mortgage representative. *Id.* ¶¶ 25–28. The Novus representative

continued attempting to sell Plaintiff a mortgage and subsequently followed up by email concerning the same solicitation. *Id.* ¶ 29.

Plaintiff further alleges that his telephone number has been listed on the National Do Not Call Registry, that Defendant failed to transmit compliant caller identification information, and that Defendant's violations were willful or knowing. *Id.* ¶¶ 31–36. Defendant now moves to dismiss each of Plaintiff's claims.

## <u>ARGUMENT</u>

### I.  The Complaint Plausibly Alleges that Defendant Directly Initiated the Telemarketing Calls.

Defendant's contention that Plaintiff fails to plausibly allege direct liability under the TCPA is incorrect and rests on a mischaracterization of both the pleading standard and the factual allegations in the Complaint. At the Rule 12 stage, Plaintiff is not required to prove his case or establish liability by a preponderance of the evidence. Rather, Plaintiff must allege facts that plausibly support the inference that Defendant itself initiated the unlawful telemarketing communications. Plaintiff has done exactly that here.

At the pleading stage, Plaintiff need not prove the precise mechanics of Defendant's telemarketing operation. He need only allege enough facts to permit a reasonable inference that Defendant directly initiated the calls. The Complaint easily clears that bar as it expressly alleges that Plaintiff received at least four telephone calls from Defendant between October and December 2024. ECF No. 1 ¶ 21. Each call originated from the same telephone number, (301) 477-0268, and the calls were intended for a person named Wayne Howard. *Id.* ¶¶ 22–24. Plaintiff answered the final call on December 10, 2024, and spoke with an agent who stated that she was calling to sell a mortgage. *Id.* ¶¶ 25–26. And the Plaintiff spoke with the agent from Novus

2

Home Mortgage, who continued the same transaction by attempting to sell Plaintiff a mortgage. *Id.* ¶¶ 27–28. The Novus agent thereafter sent Plaintiff follow-up emails concerning the solicitation. *Id.* ¶ 29. Taken together, the common purpose of the call, the immediate transfer to Defendant, Defendant's continuation of the same mortgage solicitation, and Defendant's subsequent written communications plausibly support the allegation that Defendant initiated the calls.

These allegations describe a single, uninterrupted mortgage solicitation. The initial caller informed Plaintiff that she was calling to sell a mortgage and, without ending the solicitation, immediately transferred Plaintiff to a Novus Home Mortgage agent. ECF No. 1 ¶¶ 26–28. The Novus agent then continued attempting to sell Plaintiff the same mortgage product and subsequently followed up by email. *Id.* ¶ 29. Viewed as a whole, these allegations plausibly support the inference that Defendant initiated a single, continuous telemarketing solicitation, notwithstanding the transfer between representatives.

Courts routinely reject arguments like Defendant's where, as here, the complaint alleges facts plausibly connecting the challenged calls to the defendant and showing that the calls promoted the defendant's products or services. Those allegations are sufficient to support a reasonable inference of direct involvement at the pleading stage. Although the initial caller here did not expressly identify herself as a Novus employee, the Complaint alleges an equally compelling factual connection to Defendant: the caller immediately transferred Plaintiff to a Novus Home Mortgage representative, who continued the very same mortgage solicitation and thereafter followed up by email. "At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is

3

indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649, at *5-6 (D.N.J. Jan. 24, 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.' Why then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'?").

"The logic of this approach is reflected in the decisions of any number of federal courts. *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115 at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)." *Id.*; *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended

Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at \*15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

The nonbinding authorities that Defendant highlights are easily distinguishable. In *Scruggs*, for example, the Court held that the Plaintiff provided "virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who physically placed any of the calls—i.e., CHW or some third party who merely stated they were 'associated with' CHW somehow." *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at \*5 (E.D. Va. Nov. 12, 2020). That is plainly distinguishable from the pleadings here.

Furthermore, in *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025), the plaintiff relied on unsolicited text messages sent from telephone numbers the plaintiff never identified, to which he never responded, and about which he alleged no interaction with any human. The complaint rested on the bare assertion that the messages "were sent by Defendant," and the court dismissed because it supplied "no factual details plausibly suggesting that Defendant actually sent them," observing that there was "no discussion,

for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent." *Id.* at *4.

Plaintiff's Complaint differs in every respect the *Wilson* court identified. Plaintiff answered a call and spoke with a live person who stated that the purpose of the call was to sell a mortgage. ECF No. 1 ¶ 26. He was then connected to an agent from Novus Home Mortgage, Defendant identified by name, who continued that same solicitation. *Id.* ¶¶ 27–28. He thereafter received written follow-up correspondence from that agent concerning the same transaction. *Id.* ¶ 29. And Plaintiff's counsel conducted precisely the investigation whose absence was dispositive in *Wilson*, querying the calling carrier's Caller ID database to identify the carrier of record for the originating number and to determine what caller identification information that number transmitted. *Id.* ¶ 31. Where the *Wilson* plaintiff offered the court a conclusion, Plaintiff offers a documented sequence of events and a thorough investigation.

Next, *Woodard* is also inapposite. Most immediately, the *Woodard* complaint "contradict[ed] itself": the plaintiff "allege[d] that HIA called her on March 13 in the same breath that she allege[d] a third party called her on March 13." *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024). Plaintiff's Complaint contains no such contradiction, alleging instead a single, coherent sequence — four calls from one number, an answered call, a transfer, a Novus agent, and follow-up email. Second, the court faulted the *Woodard* plaintiff for articulating "no circumstances to establish her belief that HIA was the party responsible for the calls that she received aside from the fact that their services were promoted," drawing an express contrast with a case in which a caller "identified himself as an employee of the defendant", an allegation that, the court explained, "created an inference that the defendant . . . did indeed initiate the calls." 2024 WL 942629, at *3 (discussing *Abramson v. AP*

6

*Gas & Electric (PA), LLC*, 2023 WL 1782728, at *3). *Woodard* fell on the wrong side of that line because her contacts "represented themselves as promoters of Defendant HIA, not employees," and because she "never claim[ed] that she interacted with nor received a call from HIA at all." *Id.* Plaintiff falls squarely on the *Abramson* side: he alleges that he was connected to, and spoke with, "a different agent from Novus Home Mortgage", who continued the mortgage solicitation and then corresponded with him via email. ECF No. 1 ¶¶ 27–29.

*Defendant's reliance on Cunningham* fails for a related and instructive reason. The dispositive gap there was that the plaintiff "fail[ed] to allege *how* 'Yesenia' came to be on the other end of the call." *Cunningham v. Daybreak Solar Power, LLC*, No. 4:22-cv-00599-O, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023) (emphasis added). The prerecorded message that opened the call announced that "Brian Lee" was "calling on behalf of The-Solar-Project.com", a separate, named entity, and the plaintiff's own pleading conceded that The-Solar-Project.com "doesn't appear to be linked to any specific entity." *Id.* at *2. Having named a distinct third-party principal and then disclaimed knowledge of who that principal was, the plaintiff was left to infer the defendant's involvement from the fact that the defendant "never denied calling him." *Id.* The court reasonably declined to draw that inference.

Here, Plaintiff pleads exactly what *Cunningham* lacked. The Complaint alleges precisely how the Novus agent came to be on the line: the initial caller, having stated that she was calling to sell a mortgage, connected Plaintiff to that agent during the same uninterrupted call. ECF No. 1 ¶¶ 26–27. Nor does the Complaint name any competing entity on whose behalf the call was supposedly placed. The distinction is not incidental. In *Cunningham*, the pleading itself pointed the inference *away* from the defendant by identifying a different principal; here, the caller announced the very product Defendant sells and then handed Plaintiff directly to Defendant to

7

complete the sale. Defendant is free to prove at a later stage that some third party dialed the number. At the pleading stage, Plaintiff need only allege facts making it plausible that the call and the transfer were components of a single Novus solicitation. *Cunningham* requires that a plaintiff supply some account of the connection between the caller and the defendant. Plaintiff has supplied one.

Lastly, Defendant's reliance on *Murray* is even further afield. There, the plaintiff was "informed that the [subject] call was from Choice Energy," *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015), but pleaded "no factual allegations . . . that Choice Energy had any active role or involvement in [physically] placing the calls," *id.* at *4. The attribution rested entirely on a third-party caller's passing reference to a separate, facially distinct company; the plaintiff never alleged any interaction with the defendant itself. Here, Plaintiff alleges materially more. He was not merely told that a call was "from" Novus, rather he was connected to Novus's own agent, who continued the solicitation in real time and then corresponded with him in writing about it. ECF No. 1 ¶¶ 27–29. That is active involvement, pleaded with specificity, and it is what *Murray* found absent.

Additionally, the absence of Defendant's name from the originating caller ID does not defeat the claim. The Complaint alleges that all four calls came from the same number and that the answered call resulted in an immediate transfer to Defendant for the purpose of completing the mortgage solicitation. ECF No. 1 ¶¶ 23–28. Telemarketers may use third-party dialing platforms, lead generators, call centers, or other intermediaries without displaying the ultimate seller's name or telephone number. The originating number's failure to identify Novus therefore does not render implausible the allegation that the call was initiated by or for Novus. Defendant similarly discounts the follow-up emails as insufficient to prove who placed the call. But the

8

emails are not alleged in isolation. They followed a call during which Plaintiff was transferred to a Novus representative who attempted to sell him a mortgage. *Id.* ¶¶ 27–29. The emails corroborate that Plaintiff had reached Defendant through the challenged solicitation and that Defendant pursued the commercial transaction initiated during the call. At minimum, those facts support a reasonable inference of Defendant's participation and responsibility that cannot be rejected on a motion to dismiss. Defendant also focuses on allegations referring to Defendant's "affiliates, agents, and/or other persons or entities." Those allegations do not negate the Complaint's direct allegation that the calls were made by Defendant. See *id.* ¶¶ 21, 25, 29. Rather, they recognize that the precise identity and corporate status of the person who physically dialed the telephone may be within Defendant's exclusive knowledge. Pleading that Defendant acted directly or through others is permissible, particularly before discovery reveals the structure of Defendant's telemarketing operations.

At bottom, Defendant asks this Court to resolve factual disputes and draw inferences in Defendant's favor, which is improper on a motion to dismiss. Taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendant directly initiated the unlawful telemarketing messages at issue. That is sufficient to state a claim for direct liability under the TCPA.

**II.      The Complaint Plausibly Alleges That the Calls Were Telephone Solicitations.**

Defendant next argues that Plaintiff fails to plausibly allege that the calls constituted "telephone solicitations." The Complaint, however, alleges precisely the opposite. Plaintiff expressly alleges that Defendant placed at least four telephone calls to Plaintiff between October and December 2024 for the purpose of selling mortgage products. ECF No. 1 ¶ 21. Accepting

those well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges that Defendant itself initiated four telephone solicitations.

Defendant first emphasizes that Plaintiff did not answer the first three calls. That argument misses the point. The TCPA does not require a plaintiff to answer every call in order to plausibly allege its nature. Indeed, courts have found in TCPA cases that using the same caller identification number on multiple generic telemarketing calls is sufficient to allege direct liability against a defendant. For example, in *Bird v. Pro Star Builders, Inc.,* No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at \*7-8 (C.D. Cal. Nov. 28, 2022), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. *See, e.g., Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at \*7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number)…The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.

*Accord Kemen v. Cincinnati Bell Telephone Company*, No. 1:22-cv-00152-DRC, *Order granting leave to amend the complaint* (ECF 17) (May 24, 2023) ("As for the two unanswered calls, Kemen has plausibly alleged Cincinnati Bell placed them for a telemarketing purpose too. To start, unanswered calls can 'count' for TCPA purposes. … And the allegations here give rise to a plausible inference that Cincinnati Bell placed the two unanswered calls for a telemarketing reason."). Defendant's attempt to isolate one call and disregard the remaining alleged contacts improperly fragments the Complaint. When the allegations are considered as a whole, they clearly

support the inference that more than one solicitation occurred. The Complaint alleges that Defendant placed all four calls, that each call originated from the same telephone number over a relatively short period of time, and that the calls were part of the same course of conduct. ECF No. 1 ¶¶ 21–25. Plaintiff answered the fourth call and learned that Defendant's representative was attempting to sell a mortgage. *Id.* ¶¶ 25–28. It is therefore entirely reasonable to infer that the three preceding calls from the identical telephone number, which Plaintiff alleges were also placed by Defendant, were made for the same telemarketing purpose.

The DNC Provision provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber..." 47 C.F.R. § 64.1200(c)(2). The Plaintiff has alleged that he received telephone solicitations and that they are a residential telephone subscriber. The TCPA itself defines a telephone solicitation as "the initiation of a telephone call or message *for the purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). (emphasis added); 47 C.F.R. § 64.1200(f)(13), (15). The initial caller advised that the purpose of the call was to sell a mortgage, immediately connected Plaintiff to Defendant's own representative who continued the same mortgage sales pitch before following up by email. ECF No. 1 ¶¶ 26–29. These allegations plausibly support Plaintiff's allegation that Defendant itself placed telemarketing calls promoting its own mortgage products.

Left with the plain reality that the calls encourage "the purchase or rental of, or investment in, property, goods, or services", the Defendant posits a unique theory. Since the Defendant asserts that the marketing calls were *intended* for someone else, the Plaintiffs can't state a claim. Interestingly, such a position provides a perfect loophole for telemarketers: simply send a text message advertisement to any number at any time (whether or not they are on the Do Not Call

Registry), and simply label it as intended for someone else. Luckily for consumers, such a position ignores the language from the statute which restricts "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is *transmitted to any person*…" 47 U.S.C. § 227(a)(4). (emphasis added). Of course, Plaintiff is such "person". Such a finding is consistent with the Third Circuit's instruction that "the TCPA is a remedial consumer protection statute." *Gager v. Dell Financial Servs.,* 727 F.3d 265, 271 (3d Cir. 2013). As a result, a court must construe the TCPA's statutory language broadly to affect its purpose. *Klein v. Commerce Energy, Inc.,* 256 F.Supp.3d 563, 577 (W.D. Pa. 2017).

The only court to directly consider Defendant's precise argument rejected it outright. As explained in *Cribier v. Carvana, LLC*, 2024 U.S. Dist. LEXIS 140538, *14-18 (S.D. Cal.):

> Defendant also argues that none of the messages it sent Plaintiff are "telephone solicitations" because Plaintiff was not the "intended recipient." (ECF No. 13 at 12) ("a 'telephone solicitation' does not occur if the recipient is not the target of the supposed solicitation"). Defendant's argument is one of interpretation: "telephone solicitation" is defined in the TCPA. For the reasons below, the TCPA's text does not support Defendant's argument…
>
> First, Defendant's argument is not grounded in any statutory text. Statutory interpretation begins with the text. *Republic of Sudan v. Harrison*, 587 U.S. 1, 8, 139 S. Ct. 1048, 1056, 203 L. Ed. 2d 433 (2019); *see also Boeing Co. v. United States*, 258 F.3d 958, 967 (9th Cir. 2001) (noting that the tenets of statutory construction apply with equal force to the interpretation of regulations). If the "statutory meaning is plain and unambiguous, then [the Court's] sole function . . . is to enforce it according to its terms." *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019) (internal quotations omitted). Here, the text of the statute says that a telephone solicitation is a "message for the purpose of encouraging the purchase or rental of, or investment in, property, [*16] goods, or services, which is transmitted to **any** person . . . ."**4** 47 U.S.C. § 227(a)(4) (emphasis added).
>
> Defendant argues that "'a telephone solicitation' does not occur if the recipient is not the target [, or intended recipient] of the supposed solicitation." (ECF No. 15 at 11); *see also* (ECF No. 13 at 12). The Court notes that neither "target" nor "intended recipient" appears in the definition of "telephone solicitation." 47 U.S.C.

§ 227(a)(4). Defendant's "argument thus starts off in the backseat, for there is no obvious statutory text on which to ground an 'intended recipient' interpretation." *Lemos*, 960 F.3d at 1168.

Moreover, the text of the statute demonstrates that a "telephone solicitation" occurs regardless of whether the contacted party is the intended recipient. Simply, a "telephone solicitation" includes messages "transmitted to any person." 47 U.S.C. 227(a)(4) (emphasis added). And tellingly, none of the exceptions in the statute relate to the caller's intent. *See Lemos*, 960 F.3d at 1170 ("if a caller's intent could defeat liability, the safe harbors would be unnecessary.") Thus, based on the text, a "telephone solicitation" may occur regardless of whether that person is the intended recipient.

Second, references to "telephone solicitation" in other parts of the statute do not support Defendant's argument. For example, "telephone solicitation" appears frequently in subsection (c). None of those references support Defendant's interpretation that the caller's intent matters. Instead, they support the opposite interpretation—that liability depends on whether the person called (the actual recipient) objects to the solicitation. *See, e.g.*, 47 U.S.C. § 227(c)(3)(F) (regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the do-not-call database]") (emphasis added). Likewise, other parts of the statute do not reference messages to the "target" or "intended recipient." *Id.* § 227(c)(1) (no reference to "target", "intended recipient", or similar terms). Simply, the focus is on who received the telephone solicitation—not the caller's intent. *See id.* § 227(c)(3)(F).

Finally, the statutory purpose of the TCPA is better served by rejecting Defendant's argument. *See Lemos*, 960 F.3d at 1169. In 1991 Congress passed the TCPA in response to "a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020). "Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' To that end, [*18] the TCPA imposed various restrictions on the use of automated telephone equipment." *Id.* at 615 (internal citations omitted); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) (purpose of TCPA was to crack down on unrestricted telemarketing because it created an intrusive invasion of privacy). It would frustrate the TCPA's purpose if a caller could violate the TCPA yet avoid liability because they sent the offending messages to the wrong person. *Cf. Lemos*, 960 F.3d at 1169-70 (analyzing congressional findings when enacting the TCPA and rejecting argument that a defendant's intent to call a different party could defeat TCPA liability). As a result, Defendant's argument is counter to the TCPA's purpose.

Defendant's rule would create an obvious loophole. A telemarketer could escape liability simply by asserting after the fact that an advertisement was intended for someone else, regardless of who actually received it. Nothing in the TCPA permits such a result.

Indeed, other courts have held the same with respect to similar analysis under the TCPA. In reaching the same conclusion as the Ninth Circuit, the Seventh Circuit noted that "[t]he phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?" *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012). The Eleventh Circuit held the same. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("We accordingly reject State Farm's argument that the 'intended recipient' is the 'called party'…")

Were that not enough, the FCC's interpretation—even if not binding—is in accord. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) (¶ 73) ("We find that the 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number."); *see also id*. at ¶ 72 ("We clarify that the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls.").

That the caller may initially have intended to reach someone else does not alter the objective nature of Defendant's call or erase what actually occurred. Even accepting Defendant's premise that the initial caller hoped to reach Wayne Howard, the Complaint alleges that the solicitation did not end when Plaintiff advised that he was not Wayne Howard. Instead, the caller

14

immediately transferred Plaintiff to a Novus Home Mortgage representative, who attempted to sell Plaintiff a mortgage and later followed up with Plaintiff by email. ECF No. 1 ¶¶ 26–29. At that point, Defendant knowingly continued marketing its mortgage products directly to Plaintiff. The Complaint therefore alleges far more than an accidental call to the wrong number—it alleges that Defendant affirmatively chose to continue its sales pitch after learning it had reached Plaintiff.

### III. A Private Right of Action Exists for Violations of the Caller ID Regulation, 47 C.F.R. § 64.1601(e).

Defendant's final argument, that there is no private right of action for the Caller ID regulation at 47 C.F.R. § 64.1601(e) – relies on a line of authority, principally *Worsham v. Travel Options, Inc.*, No. 14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), that has been squarely and repeatedly rejected by every court to examine the question closely over the past year. Defendant's own cited authorities, *Griffin v. American-Amicable Life Ins. Co. of Tex.*, 2024 U.S. Dist. LEXIS 175344 (D. Or. Sept. 27, 2024); *Worsham v. Disc. Power, Inc.*, 2021 U.S. Dist. LEXIS 141842 (D. Md. Jul. 29, 2021); and *Meyer v. Capital All. Grp.*, 2017 U.S. Dist. LEXIS 183690 (S.D. Cal. Nov. 6, 2017), either predate, or simply adopted without independent analysis, reasoning that even some of those very same courts have since abandoned.

The parties' disagreement is not whether Congress expressly created a private right of action in § 227(c)(5). It plainly did. The only question is whether the Caller ID regulation, § 64.1601(e), was promulgated pursuant to § 227(c). Once that question is answered, the remainder of the analysis follows.

### A. *Dobronski v. Selectquote and its progeny mark a decisive and unanimous shift in the law.*

In *Dobronski v. Selectquote*, the Eastern District of Michigan undertook a comprehensive analysis of the genesis of the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e). *Selectquote*, 773 F. Supp. 3d at 375. *Selectquote* contains the most comprehensive analysis of Section 64.1601(e) to date. Since *Selectquote*, *every court* to consider a Section 64.1601(e) caller ID claim has held that there is a private right of action for violations thereof. *Starling v. Homeover Gen. Contractors*, No. 4:25-CV-993-JDK, 2026 WL 1649101, at *4 (E.D. Tex. June 8, 2026); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025), *motion to certify appeal denied*, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025); *Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D. Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025); *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), *report and recommendation adopted*, No. 25-10169, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-CV-05671-TMC, 2026 WL 25742, at *5 (W.D. Wash. Jan. 5, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-CV-396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *7 (D. Mass. Mar. 18, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at *4 (D. Mass. Mar. 17, 2026); *Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026); *Dobronski v. Uppleger*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

**B. The same process of elimination that governs the Do Not Call Registry confirms Section 64.1601(e) was promulgated under Section 227(c).**

The reasoning driving this unanimous post-*Selectquote* consensus mirrors the analysis set out in Point II, *supra*. Just five subsections of the TCPA authorize any rulemaking at all. Sections 227(b)(2), (c), (d), (e)(3), and (i). Section 64.1601(e) could not have been promulgated under Section 227(d), which is limited to fax machines and automatic dialing systems, not telemarketing calls generally, nor Section 227(b), for the same reason. Section 227(e)(3), which was enacted *after* Section 64.1601(e), so this is out. Finally, Section 227(i) concerns information sharing with the FCC. *Selectquote*, 773 F. Supp. 3d at 376. That leaves only Section 227(c), the very subsection Defendant itself contends it was not promulgated under. Defendant never identifies any other statutory delegation that could support § 64.1601(e), because none exists.

The *Newell* court addressed itself why the subject regulation could not have been promulgated under Section 227(d), and why, although technical, it is not a technological mandate:

> Further, § 227(d) only applies to telemarketing made using specific technologies – fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages – whereas § 64.1601(e) applies to a broader range of telemarketing calls, including traditional manually dialed telemarketing calls. The Third Circuit has cautioned that "our starting point [in regulatory interpretation] is to attempt reconciliation of seemingly discordant statutes and regulations." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 623 (3d Cir. 1989). It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority. Section 64.1601(e) thus fits best under § 227(c), not (d).

*Newell*, 791 F. Supp. 3d at 579. The issue with all the authorities Defendant cites, including *Worsham*, is that they never analyzed which subsection of § 227 authorized the regulation in the first place, 47 C.F.R. § 64.1601(e), was promulgated, nor did they reach their conclusion independently. Instead of tussling with the statute and analyzing it, as in *Selectquote* and its progeny, each of the authorities Defendant cites simply rested on persuasive authority from other courts which themselves relied on faulty and underdeveloped reasoning and did not engage in extensive analysis as to the precise genesis of this right of action, which is 47 U.S.C. § 227(c).

**C. The regulatory history confirms that Section 64.1601(e) was promulgated in the same 2003 order, under the same authority, as the Do Not Call Registry rules Defendant concedes are privately enforceable.**

Section 64.1601(e) was adopted in the very same 2003 TCPA Order that created the National Do Not Call Registry rules discussed in Point II, *supra*, the same order in which the FCC invoked Section 227(c) no fewer than 54 times. 18 FCC Rcd. 14014. The FCC explained that the caller ID rules would "improve the ability of consumers to *identify and enforce* do-not-call rights against telemarketers," because consumers were "frustrated by the failure of many telemarketers to transmit caller ID information," which "makes it *difficult for consumers to enforce*" the TCPA. *Id.* at 14068, 14118 (emphasis added). The 2003 TCPA Order references Section 227(c) no fewer than *54 times* and only one other section, Section 227(d), only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134.

Section 64.1601(e) serves precisely the consumer protection functions Congress mandated in Section 227(c). It ensures that consumers receiving telemarketing calls know the identity of the telemarketer, enabling them to lodge do not call requests and exercise the very privacy rights § 227(c) was enacted to protect. The FCC concluded that "the caller ID requirements at 47 C.F.R. § 64.1601(e) will go into effect on January 29, 2004," pursuant to its authority under Section 227(c). *Id.* at 14143. It would be incongruous, and contrary to the principle that Executive agencies do not create regulations absent an explicit authorization from Congress, *Bowen*, 488 U.S. at 204, to hold that the very same rulemaking created a private right of action for the Do Not Call requirements adopted in Section 64.1200(c) but not for the Caller ID requirements adopted alongside them in Section 64.1601(e), under the identical statutory authority. *See Alexander*, 532 U.S. at 291 (2001) ("Agencies may play the sorcerer's apprentice

18

but not the sorcerer himself.").  Given that courts presume that agencies act lawfully and given that the instant regulation must rest on *some* subsection of § 227, once subsections (b), (d), (e), and (i) are eliminated, only (c) is left standing. And § 227(c)(5) also explicitly imparts consumers with a private right of action to enforce the regulations Congress explicitly authorized. Both the Do Not Call and Caller ID regulations are consumer privacy regulations. Both were promulgated under § 227(c). Both are enforceable under § 227(c)(5).

### D. *Defendant's authorities reflect reasoning that courts have since abandoned.*

Defendant's cited cases, including *Worsham*, *Griffin*, *Braver*, and *Meyer*, share a common defect because none engaged in independent analysis of which TCPA subsection actually authorized Section 64.1601(e) and each simply followed *Worsham*'s unexamined assumption that the regulation fell under Section 227(d). As the *Selectquote* and *Newell* courts recognized, that assumption cannot be squared with the statutory text, the regulatory history, or the FCC's own express invocation of Section 227(c) in adopting the rule. Given that every court to engage with the question on the merits since *Selectquote* has reached the same conclusion, this Court should do the same, and deny Defendant's motion as to Plaintiff's Caller ID claim.

Defendant's authorities therefore rest on a premise that every court to conduct a full statutory analysis has now rejected. Because § 64.1601(e) was promulgated pursuant to § 227(c), Plaintiff may enforce that regulation through the private right of action Congress expressly created in § 227(c)(5). Defendant's motion should therefore be denied.

### IV. Defendant's Personal-Registration on the Do Not Call Registry Argument is Contrary to Law and Widely Rejected.

Defendant's remaining argument—that Plaintiff must have personally registered his number on the Registry—fails as the regulations require only that the telephone number be

registered. 47 C.F.R. § 64.1200(c)(2). The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA

plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has

been disagreed with by every other court to consider it and its premises and was most notably

rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL

17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the

argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier*

court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-
> populated: it is a list of phone numbers for individuals who have requested that
> telemarketers not contact them. While it is possible a third-party may have registered a
> plaintiff's phone number before a plaintiff acquired it, this is unlikely given how
> infrequently people change numbers. And it is particularly unlikely here given Plaintiff's
> well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts.,*

*LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering

the TCPA's private right of action, the statutory scheme, and other language in the implementing

regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years

after *Callier*, another federal court recently made forcefully clear how far of an outlier

*Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry
> provision need not allege or prove that he personally registered his phone number
> to state a claim. Every court to consider this issue — with one exception — has
> reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.*, No.
> 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at *14
> (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-
> PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at *2 (D. Ariz.
> Mar. 13, 2024). The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins.*
> *Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022
> WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because
> plaintiff did not allege that she personally registered her phone number in the
> NDNC Registry). In *Rombough*, the court focused on the following language
> from the implementing regulation: "No person or entity shall initiate any
> telephone solicitation to . . . [a] residential telephone subscriber *who has*
> *registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. §

21

64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca., March 3, 2025). *Nichols* correctly recognized that Defendant's reading cannot be reconciled with the regulation's command that registrations remain effective indefinitely. This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

Accordingly, the Court should reject Defendant's invitation to rewrite the TCPA and its implementing regulations to impose a personal-registration requirement that appears nowhere in the statutory or regulatory text.

**V.     The Complaint Plausibly Alleges That Defendant Acted Willfully or Knowingly.**

Defendant also challenges Plaintiff's allegations that its violations were willful or knowing. At the pleading stage, however, Plaintiff need only allege facts that plausibly support such an inference. The Complaint does so.

The Complaint alleges that Defendant initiated at least four telemarketing calls to Plaintiff between October and December 2024, notwithstanding that Plaintiff's telephone number had been listed on the National Do Not Call Registry prior to the calls at issue. ECF No. 1 ¶¶ 21–25, 31. Plaintiff further alleges that, after Plaintiff answered the final call, Defendant's representative did not terminate the call upon learning that Plaintiff was not the individual initially sought. Instead, Defendant's representative continued attempting to sell Plaintiff a mortgage, and Defendant thereafter followed up with Plaintiff by email concerning the same mortgage solicitation. *Id.* ¶¶ 26–29. The Complaint also alleges that Defendant failed to transmit compliant caller identification information in connection with the challenged telemarketing campaign. *Id.* ¶¶ 32–36. Taken together, these allegations plausibly support the inference that Defendant deliberately and intentionally engaged in the conduct giving rise to Plaintiff's TCPA claims.

The TCPA provides for treble damages for any entity violating the TCPA "if the defendant willfully or knowingly violated the Act." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016); 47 U.S.C. §227 (c)(5)(C). Here, the Plaintiff pleads far more than what the Defendant claims is necessary for a holding that the Defendant violated the TCPA in this matter.

First, in interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that

the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute.").

The allegations at issue plainly demonstrate that the Defendant was taking intentional actions including not removing individuals who were on the National Do Not Call Registry from their marketing efforts. Rather, they are explicit and deliberate. For this reason alone, the motion to dismiss should be denied as far less stringent allegations have been held as sufficient to withstand a motion to dismiss. *See e.g., Meyer v. Bebe Stores, Inc.*, Case No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at * 4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS, sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim); *Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 U.S. Dist. LEXIS 91976, 2014 WL 3101426, at * 4 (C.D. Cal. July 7, 2014) (finding allegation that "defendant's conduct constituted multiple knowing and/or willful violations of the TCPA" sufficient to withstand a motion to dismiss); *Fox v. Asset Acceptance, LLC*, Case No. 13cv0922 DMS (BGS), 2013 U.S. Dist. LEXIS 197836, 2013 WL 12076476, (S.D. Cal, Oct. 30, 2013); *Maier v. J.C. Penney Corp., Inc.*, No. 13cv0163-IEG (DHB), 2013 U.S. Dist. LEXIS 84246, 2013 WL 3006415, at *4 (S.D. Cal. June 13, 2013) (denying motion to dismiss).

Defendant's arguments ultimately ask the Court to reject these factual allegations and instead infer that any violations were inadvertent. That is not the standard governing a motion to dismiss. Questions regarding Defendant's knowledge, intent, telemarketing practices, compliance procedures, and the manner in which its calling campaign was conducted are factual matters appropriately resolved through discovery. At this stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's

favor. Because Plaintiff has plausibly alleged that Defendant intentionally engaged in the conduct constituting the challenged TCPA violations, Defendant's request to dismiss Plaintiff's claim for treble damages should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: July 29, 2026

PLAINTIFF, on behalf of himself
and others similarly situated,


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com