# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ASHER BRONSTIN, on behalf himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IXONIA BANK d/b/a NOVUS HOME MORTGAGE,<br><br>Defendant. | No. 2:26-cv-00970-BHL<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.      Plaintiff Failed to Plausibly Allege Any Theory of TCPA Liability Against Novus. .............1

II.     Plaintiff Failed to Allege Sufficient Facts Supporting Other Elements of His Claims.........10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adam v. CHW Grp., Inc.*,
2021 WL 7285905 (N.D. Iowa Sept. 9, 2021)........................................................................5, 7

*Alexander v. Sandoval*,
121 S.Ct. 1511 (2001) ........................................................................................................ 15

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)........................................................................ 10

*Bank v. GoHealth, LLC*,
2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021)........................................................................4, 6

*Bey v. Soc. Sec. Admin.*,
2025 WL 1616455 (N.D. Ill. June 6, 2025)........................................................................... 1

*Bird v. Pro Star Builders, Inc.*,
2022 WL 18216007 (C.D. Cal. Nov. 28, 2022) ..................................................................... 11

*Bradshaw* v. *CHW Grp., Inc.*,
763 F. Supp. 3d 641 (D.N.J. 2025).....................................................................................5, 6

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ............................................................................................. 2

*Cosenza v. Nice North America, LLC*,
2026 WL 2248829 (C.D. Ill. Aug. 4, 2026)................................................................. 2, 4, 5, 9

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023)............................................................. 2, 4, 7, 9

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023
WL 11944898 (Nov. 17, 2023) ........................................................................................... 12

*Hulce v. Zipongo Inc.*,
132 F.4th 493 (7th Cir. 2025) ............................................................................................ 12

*In re Dish Network*,
28 F.C.C. Rcd. 6574 (2013)................................................................................................. 4

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015).................................................................................................... 4

*Jance v. Homerun Offer LLC*,
2021 WL 3270318 (D. Ariz. July 30, 2021)........................................................................... 13

*Katz v. Caliber Home Loans, Inc.*,
2023 WL 5311488 (N.D. Tex. Aug. 17, 2023) .....................................................................4, 5

*Kemen v. Cincinnati Bell Tel. Co.*,
Case No. 1:22-cv-00152-DRC .......................................................................................... 11

ii

*Knutson v. Blue Light Sec., Inc.*,
  2018 WL 1172611 (S.D. Cal. Mar. 6, 2018) ........................................................................... 13

*Less v. Quest Diagnostics Inc.*,
  2021 WL 266548 (N.D. Ohio Jan. 26, 2021) ........................................................................... 12

*Levenstein v. Salafsky*,
  164 F.3d 345 (7th Cir.1998) ..................................................................................................... 3

*Marks v. Unique Lifestyle Vacations*,
  2024 WL 1051974 (E.D. Pa. Mar. 11, 2024) ........................................................................5, 6

*Moore v. CHW Group*,
  2019 WL 3216029 (N.D. Ill., Jul. 17, 2019)..........................................................................2, 9

*Murray v. Choice Energy, LLC*,
  2015 WL 4204398 (S.D. Ohio July 10, 2015)....................................................................4, 7, 10

*Mustari v. New Hope Acad.*,
  2004 WL 1375530 (N.D. Ill. June 21, 2004) ........................................................................... 3

*Newhart v. Quicken Loans Inc.*,
  2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) ........................................................................... 12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ..................................................................................................... 3

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023).................................................................13, 14

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
  2022 WL 2713278 (N.D. Iowa June 9, 2022) .....................................................................13, 14

*Scruggs v. CHW Grp., Inc.*,
  2020 WL 9348208 (E.D. Va. Nov. 12, 2020).....................................................................4, 7, 8

*Slominski v. Globe Life Inc.*
  2024 WL 556978 (E.D.N.C. Feb. 12, 2024)..........................................................................5, 6

*Smith v. Am.-Amicable Life Ins. Co.*,
  2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) .......................................................................5, 6, 7

*Stemke v. Marc Jones Constr.*,
  2021 WL 4340424 (M.D. Fla. Sept. 23, 2021)......................................................................5, 6

*Taylor v. Suntuity Solar LLC*,
  2024 WL 964199 (M.D. Fla. Mar. 6, 2024) ..........................................................................5, 6

*Tom v. Delancey Street Group, LLC*,
  2026 WL 2255107 (E.D.N.Y. Aug. 5, 2026)........................................................................... 15

*Tuso v. Lennar Corp.*,
  2024 WL 1239474 (S.D. Fla. Mar. 22, 2024)........................................................................... 1

*U.S. v. Illinois*,
  796 F. Supp. 3d 494 (N.D. Ill. 2025) ..................................................................................... 3

iii

*Wilson v. MEDVIDI Inc.*,
  2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ...........................................................................7, 8

*Woodard v. Health Ins. All.*,
  2024 WL 942629 (N.D. Ill. Mar. 5, 2024)......................................................................... passim

**STATUTES**

47 U.S.C. § 227(c) ...........................................................................................................9, 14

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2) ..................................................................................................... 13

47 C.F.R. § 64.1601(e) ......................................................................................................... 14

47 C.F.R. § 64.1601(e)(1) ..................................................................................................... 15

U.S. Const., Article III ........................................................................................................... 6

**RULES**

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6).....................................................................................................2, 4, 6

iv

Plaintiff's Opposition to Novus' Motion to Dismiss ("Motion") merely confirms that his Complaint is fatally deficient on all the grounds that Novus identified. The Motion should be granted, because Plaintiff's Complaint pleads no non-conclusory facts plausibly tying Novus to the initiation of the challenged calls or supporting other essential elements of his asserted TCPA claims.

## I. Plaintiff Failed to Plausibly Allege Any Theory of TCPA Liability Against Novus.

Plaintiff's Opposition does not refute the primary grounds for relief in the Motion— namely, that Plaintiff's failure to plausibly allege a theory of TCPA liability (*i.e.*, direct or vicarious liability) against Novus, in accordance with *Iqbal*/*Twombly*, <u>alone</u> warrants a <u>complete</u> dismissal here. *Compare* Dkt. 8 at 2-3, 6-17 *with* Dkt. 9 at 2-9. In response to this key threshold argument, Plaintiff focuses only on direct TCPA liability, contending Novus "directly initiated" the subject calls (Dkt. 9 at 9), and does not address vicarious TCPA liability, despite the numerous conclusory allegations in his Complaint suggesting possible third party "agent" involvement. *See* Dkt. 8 at 12 (citing Dkt. 1, ¶ 63 (alleging "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" placed the subject calls); *id.* ¶¶ 46, 65, 66, 70, 72 (reflecting nearly identical or similar allegations about third parties)).[1] Nevertheless, Plaintiff's arguments on direct liability are unavailing for several reasons:

<u>First</u>, Plaintiff argues that, "[a]t the Rule 12 stage, Plaintiff is not required to prove his case or establish liability by a preponderance of the evidence" or "prove the precise mechanics of Defendant's telemarketing operation" and instead he "must allege facts that plausibly support the inference that Defendant itself initiated the unlawful telemarketing communications." Dkt. 9 at 2. Plaintiff is misconstruing Novus' arguments on direct TCPA liability, as well as the law on this issue.

---

[1] By failing to address the issue of vicarious liability, Plaintiff has conceded this point. *See Tuso v. Lennar Corp.,* 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (dismissing and deeming plaintiff has having conceded defendant's TCPA liability argument in a motion to dismiss by not addressing it in his opposition); *Bey v. Soc. Sec. Admin.*, 2025 WL 1616455, at *2 (N.D. Ill. June 6, 2025).

1

Novus is not asking Plaintiff to "prove" his case or provide evidence at this stage. Rather, federal law is clear that, when applying *Iqbal* and *Twombly* to a TCPA case, just baldly concluding "someone violated the TCPA" (*see* Dkt. 8 at 3 (quoting *Drew*)), or that the defendant "and/or" a third party agent "placed" the subject calls as Plaintiff did, is insufficient to plead a plausible direct liability theory and survive dismissal under Rule 12(b)(6). *See id*. at 3, 6-17 & n.1 (collecting cases). Indeed, the Seventh Circuit has interpreted *Twombly* and "*Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading…, rather than providing some ***specific facts*** to ground those legal claims[.] [Such plaintiffs] ***must do more***." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Plaintiff did not heed this admonishment.

Further, it is well-settled nationally (especially in the Seventh Circuit) that direct liability under the TCPA only attaches to parties that "***physically***" take the steps necessary to make or initiate ***each*** of the subject phone calls ***directly*** to the plaintiff's phone number. *See* Dkt. 8 at 3, 7-12 & n.1 (discussing various authorities, including *inter alia Warciak*, *Lightfoot*, *Woodard*, *Brownlee*, *Moore*, *Bennett*, *Cunningham*, *Fisher*). *See also Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *5 (C.D. Ill. Aug. 4, 2026) (dismissing similar complaint brought by the same counsel representing Plaintiff on this basis, where "[t]he only allegation suggesting direct liability [in the complaint was] 'Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff[.]'"). Put differently, this theory requires sufficiently pleading, in accordance with federal pleading standards, that the defendant itself literally picked up the phone and called the plaintiff directly in each instance. *Id*. Plaintiff simply did not do so in this case; and his "either/or" pleading strategy cannot avoid dismissal on these grounds under federal law, as the Motion shows.

**Second**, Plaintiff's Opposition attempts to dance around this critical issue by arguing that the threadbare allegations in his Complaint "plausibly support the inference that Defendant initiated a

2

single, continuous telemarketing solicitation, notwithstanding the transfer between representatives." Dkt. 9 at 3. Along these lines, Plaintiff's Opposition argues, *inter alia*, that (i) "[w]hen Plaintiff answered the final call, he was immediately solicited for a mortgage, spoke to a Novus Home Mortgage representative with a sales pitch, and thereafter received follow-up emails from Defendant concerning the solicitation" and (ii) "Defendant [was] identified by name" on the one alleged call that he answered. *Id*. at 1, 6. But that is not what his Complaint actually ***alleges***, however.[2]

In fact, the <u>only</u> allegations about the subject calls and identity of the caller in Plaintiff's <u>entire</u> Complaint (*see* Dkt. 1), which appear in seven wholly-conclusory paragraphs, are as follows:

23. All of the calls came from caller ID 301-477-0268.

24. Plaintiff missed the first three calls on October 29, October 30, and December 9, 2024.

25. On December 10, 2024, Plaintiff received a final call from Defendant and answered the call.

26. Plaintiff spoke with an agent who stated she was calling to sell a mortgage and was looking for "Wayne Howard."

27. Plaintiff was then connected to a different agent from Novus Home Mortgage.

28. The agent tried to sell Plaintiff a mortgage.

29. Plaintiff subsequently received follow up emails from the Novus agent, which confirmed that the Defendant had been the one who called him.

Importantly, though, ***Plaintiff does <u>not</u> plausibly allege that Novus was identified in any fashion, either before or after the alleged transfer***, and relies instead on bald conclusions. Nor does Plaintiff give any factual basis for concluding the initial caller or the person to whom he was transferred was

---

[2] Of course, it is "axiomatic that a plaintiff cannot amend [his or her] complaint through briefing" in response to a motion to dismiss. *U.S. v. Illinois*, 796 F. Supp. 3d 494, 511, n.9 (N.D. Ill. 2025) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011)). Therefore, the Court should disregard these arguments and any new "facts" in the Opposition when ruling on the Motion. *See Mustari v. New Hope Acad.,* 2004 WL 1375530, at *3 (N.D. Ill. June 21, 2004) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998)).

a Novus "agent," let alone plead any facts from which this Court could infer Novus itself actually physically initiated any of the subject calls directly to him. *See* Dkt. 8 at 11. Moreover, as the Motion argues, myriad courts have found a call ***transferred to*** a defendant—which is what Plaintiff is seemingly concluding here—is <u>not</u> direct TCPA liability as a matter of law. *Id*. at 15 (collecting cases). Plaintiff's Opposition glosses over this, distorts the allegations in the Complaint to make it seem like the transfer is part of the original call, and cites no authority compelling a different result.

**Third**, Plaintiff further argues that "[c]ourts routinely reject arguments like Defendant's where, as here, the complaint alleges facts plausibly connecting the challenged calls to the defendant and showing that the calls promoted the defendant's products or services." Dkt. 9 at 3. He is wrong.

Again, allegations merely "connecting" a call to the defendant in some fashion is <u>not</u> the accepted standard for pleading direct TCPA liability claims.[3] And contrary to Plaintiff's argument, the Motion shows how courts in and beyond this Circuit have routinely dismissed similar TCPA complaints on this basis under Rule 12(b)(6), where (as here) the plaintiffs merely alleged that the defendant's products were mentioned or a call back number or website associated with the defendant was provided during the subject calls or that they received an email from the defendant at some point thereafter, which the courts correctly found to be insufficient to plausibly allege a direct TCPA liability theory standing alone. *See* Dkt. 8 at 13 (citing, *inter alia*, *Meeks*, *Barnes*, *Katz v. Caliber Home Loans*, *Abante*, *Murray*, *Scruggs*, *Hamilton*); *Cosenza*, 2026 WL 2248829, at *5 (dismissing on this basis under Rule 12(b)(6), and rejecting plaintiff's argument that "the fact

---

[3] Rather, it is settled that "a person or entity 'initiates' a telephone call [for direct TCPA liability] when it takes the steps necessary to ***physically place*** a telephone call, and generally does not include persons or entities … that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6583 (2013) (emphasis added). Thus, just any "connection" to a call will not suffice, and there must be a "***direct connection*** between a person or entity and the making of a call" for direct liability to attach. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015) (emphasis added).

that the representative provided him the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible" without more because "that argument cannot find support in this Circuit's case law") (citing various authorities).

**Fourth**, other than five cases which he misconstrues (discussed below), Plaintiff's Opposition ignores most of the many on-point authorities cited in the Motion on this front, including numerous decisions from courts in this Circuit dismissing similarly-defective TCPA complaints on this basis. Instead, to support his "connection" argument, Plaintiff relies on a handful of out-of-circuit outlier decisions that he does not meaningfully analyze, stand in stark contrast to the majority of decisions from this Circuit and nationally on this issue, and are easily distinguishable and unpersuasive. *See* Dkt. 9 at 3-4 (citing *Bradshaw*, *Marks*, *Katz*, *Smith*, *Adam*, *Taylor*, *Stemke*, *Slominski*). These should not be applied here. *See also Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023); *Woodard v. Health Ins. All.*, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024); *Cosenza*, 2026 WL 2248829, at *5 (each rejecting *Taylor*, *Slominski*, *Stemke,* and/or *Smith* in dismissing complaints filed by the same counsel representing Plaintiff on this basis).

For example, the courts in *Katz v. CHW Grp., Inc.* and *Bradshaw* v. *CHW Grp., Inc.* did not even ***discuss*** the accepted standards for pleading direct TCPA liability in their respective opinions; and they certainly did not follow those standards when they incorrectly credited only the alleged content of the subject calls and the plaintiffs' conclusory allegations about them. *See generally* 2023 WL 6445798 (W.D. Ark. Sept. 29, 2023) and 763 F. Supp. 3d 641 (D.N.J. 2025). Therefore, *Katz* and *Bradshaw* carry no persuasive weight and should not be applied in this case for this reason alone.

Moreover, the *Bradshaw* court relied on certain factual allegations pled there to conclude that the defendant placed the calls at issue—including that the plaintiff received a voicemail from someone who stated that they were "calling from" the defendant, and the ***plaintiff called*** the

5

defendant and spoke to an *employee* of the defendant. 763 F. Supp. 3d at 646-647. Similarly, in *Marks v. Unique Lifestyle Vacations*, 2024 WL 1051974, at \*3 (E.D. Pa. Mar. 11, 2024), the plaintiff alleged that he asked the callers to identify themselves (and they did so), and he compared the caller's numbers to lists on the internet where consumers complained about calls from the defendant. In *Taylor v. Suntuity Solar LLC*, the plaintiff alleged she answered two calls which "followed the same script," and she received an email from the defendant's "call center agent" following the second call "which confirmed Plaintiff spoke with a representative of Defendant during the call[s]." 2024 WL 964199, at \*1-6 (M.D. Fla. Mar. 6, 2024). In *Stemke v. Marc Jones Constr.,* the plaintiff alleged that she somehow "confirmed" that one of the phone numbers used by one of the callers "belong[ed]" to the defendant. 2021 WL 4340424, at \*2–3 (M.D. Fla. Sept. 23, 2021). And the plaintiff in *Slominski v. Globe Life Inc.* received several identical pre-recorded calls from the defendant, each asking her to call the defendant back at the same number. *See* 2024 WL 556978, at \*1 (E.D.N.C. Feb. 12, 2024). At bottom, even if these authorities were well-reasoned (and, respectfully, they are not), they are inapposite in the present case, as Plaintiff does not plead any such facts in his Complaint.

The *Smith v. Am.-Amicable Life Ins. Co.* court erred by misapplying and conflating the more lenient standards for pleading the "traceability" element for Article III standing purposes under Rule 12(b)(1), where an indirect connection to a call *might* show traceability in *some* instances, with the more precise standards for plausibly alleging directly TCPA liability theories under Rule 12(b)(6), where it is well established that an indirect connection will not suffice. *See* 2022 WL 1003762, at \*1–2 (E.D. Pa. Apr. 4, 2022). These are distinct legal concepts with different pleading requirements, as other courts have correctly held. *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at \*6–12 (E.D.N.Y. Mar. 8, 2021) (dismissing on direct TCPA liability grounds under Rule 12(b)(6)).[4]

---

[4] *Smith* is also factually distinguishable because, *inter alia*, the plaintiff was expressly informed by the caller he was speaking with the defendant. *See* 2022 WL 1003762, at \*2. Not so here.

6

In *Adam v. CHW Grp., Inc.,* the court misinterpreted the defendant's cited authorities on this issue (*i.e.*, *Aaronson*, *Frank*, *Childress*, and *Sheski*, which are also cited in the Motion at bar) and incorrectly held that those plaintiffs "made no allegations that the defendant placed the calls at issue." 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021). However, the plaintiffs in each had alleged, in the same conclusory and equivocating fashion and without factual support that Plaintiff has attempted here, that <u>either</u> the defendants physically initiated the calls <u>and/or</u> third parties did. In short, it is apparent *Smith* and *Adam* were wrongly decided and thus also have no persuasive value.

**Fifth**, Plaintiff attempts to distinguish only five of the many authorities Novus cited on this issue—namely, *Scruggs*, *Wilson*, *Woodard*, *Cunningham*, and *Murray*. *See* Dkt. 9 at 6-8. Plaintiff failed, as each case supports Novus' position and warrants dismissal on direct liability grounds here.

For example, the *Wilson* court dismissed a substantially similar complaint filed by the same counsel representing Plaintiff for failing to properly allege a TCPA liability theory, holding:

> Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, [], the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA," [] the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such "unadorned labels" are insufficient as a matter of law….

*Wilson v. MEDVIDI Inc.,* 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (internal and case citations omitted). This rings true here. As noted in the Motion and above, Plaintiff merely concludes, with no plausible factual support, that Plaintiff received calls "from Defendant" or the like. *See, e.g.,* Dkt. 1, ¶¶ 21, 25, 27-28. But again, Plaintiff does <u>not</u> allege "Defendant [was] identified by name" on the one call he answered, as he now argues in his brief (*see* Dkt. 9 at 6), or in any other fashion. Moreover, despite what his Opposition suggests (*see id.*), there is no discussion in the Complaint of

7

any investigation Plaintiff conducted prior to filing suit to form his understanding that Novus operated the 301 number from which the alleged calls originated. To the contrary, to the extent any investigation was conducted, it apparently did <u>not</u> connect Novus with the 301 phone number, as Plaintiff seemingly admits in his brief;[5] and instead his Complaint merely concludes that "Onvoy" is "Defendant's calling carrier" without any facts supporting that conclusion. *See* Dkt. 1, ¶ 31. It is also important to note that the defective *Wilson* complaint contained virtually the same "either/or" conclusory allegations as to the caller's identity that Plaintiff has pleaded here—*i.e.,* that the "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" placed the subject calls—as noted in the Motion and above. The result should be the same.

Further, as Plaintiff's Opposition correctly notes, the only "factual" allegation that the *Scruggs* plaintiff offered tying the subject calls to the defendant in that case was that the caller stated to him that they were "associated with" the defendant. *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *5 (E.D. Va. Nov. 12, 2020). Yet, what Plaintiff overlooks is that his Complaint here does not even contain that much information, relying instead on barren conclusions as to the caller's identity. The *Scruggs* plaintiff also pled in his complaint—just like Plaintiff did here (*see* Dkt. 1, ¶ 63)—that he needed "discovery" to confirm the identity of the caller, which that court held showed he was merely "on an impermissible fishing expedition" and actually did "not know who called" him, and thus that he had not adequately pled <u>any</u> TCPA liability theory. 2020 WL 9348208, at *6–7, 10. Plaintiff's Opposition provides no reason for this Court to rule differently in this case.

In *Woodard*, it was not only the contradictory allegations that led to the dismissal in that case. Rather, the court held that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" on this basis. 2024

---

[5] Plaintiff's brief notes querying the "originating number" did <u>not</u> "identify Novus." Dkt. 9 at 8.

WL 942629, at *3 (citing *Moore v. CHW Group*, 2019 WL 3216029, at *2 (N.D. Ill., Jul. 17, 2019)). Along those lines, the court ultimately dismissed because the complaint at bar "contain[ed] no factual allegations of liability which [we]re distinguishable from the language of the TCPA" and thus would have required the court to improperly "speculate, rather than reasonably infer," in contravention to *Iqbal/Twombly*, "that [the defendant] (or any party for that matter) called more than once – a requisite element to successfully state a claim under 47 U.S.C. § 227(c)." *Id*. The same defect exists with Plaintiff's Complaint in this case, as shown in the Motion and above. Plaintiff's Opposition does not show otherwise. Plus, Plaintiff's Complaint here suffers from the same implausible contradictions— while he suggests in his brief that the Complaint only alleges Novus called him "directly" (Dkt. 9 at 9), it actually alleges that Novus "and/or" third party "agents" placed all of the calls. *See also Cosenza*, 2026 WL 2248829, at *5 (dismissing where, as here, "Plaintiff simultaneously alleges that the [subject] call was initiated by Defendant directly or by a telemarketer with Defendant's authority" and finding that such contradictory "factual allegations do not make liability plausible"). Like the *Woodard* and *Cosenza* courts, this Court should decline to speculate who really called Plaintiff.

Similarly, in *Cunningham v. Daybreak Solar Power, LLC*, the plaintiff conclusorily alleged that "Defendant (or an agent acting on behalf of Defendant) placed" the subject call, but did not plead any plausible facts supporting an inference that the defendant itself "physically initiated" the call, as is required to plead direct TCPA liability. 2023 WL 3985245, at *2-3 (N.D. Tex. June 13, 2023). The *Cunningham* plaintiff likewise alleged that he was called by one caller (albeit one that he identified by name) who then transferred him to someone else, who he baldly concluded was an "employee" of the defendant's. *Id*. at *1. Here, Plaintiff's Complaint offers **even less** detail, asserting only that he "spoke with an agent who stated she was calling to sell a mortgage and was looking for 'Wayne Howard'" and that he was then "connected to a different agent from Novus

9

Home Mortgage" who "tried to sell Plaintiff a mortgage." Dkt. 1, ¶¶ 26, 27. The Court would need to make an extreme inferential leap, in violation of *Iqbal*/*Twombly*, to infer Novus physically initiated any calls directly to Plaintiff based on purely speculative allegations. It should decline.

Finally, like the complaint in *Murray v. Choice Energy, LLC*, Plaintiff's Complaint alleges zero plausible facts (beyond his naked conclusions) from which this Court could reasonably infer that Novus had any active role or involvement in physically placing the calls at issue, such that it could be held directly liable under the TCPA in this case. *See* 2015 WL 4204398, at *4 (S.D. Ohio July 10, 2015). Plaintiff's Opposition does not show where such facts exist in his Complaint because none do, and attempts to amend it through briefing. This is insufficient to avoid dismissal.

All told, Plaintiff has not plausibly alleged a direct TCPA liability theory, in accordance with *Iqbal*/*Twombly* and the weight of applicable federal authority. "[S]imply asserting a purported fact," as Plaintiff has done here, "does not make it one, where there are no factual allegations [pled] to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA complaint on this basis). Plaintiff's Opposition does not refute Novus' arguments on this point. Instead, the Opposition misconstrues and/or ignores well-settled law, relies on a handful of inapposite outlier decisions, improperly distorts or attempts to replead the allegations in the Complaint, and also ignores (thereby conceding) Novus' arguments as to his failure to allege a vicarious TCPA liability theory. The Complaint should be dismissed on these bases.

**II.**      <u>**Plaintiff Failed to Allege Sufficient Facts Supporting Other Elements of His Claims.**</u>

Beyond Plaintiff's failure to properly plead a liability theory, which by itself is dispositive, his Complaint also lacks sufficient plausible facts supporting other essential elements of his claims.

<u>**First**</u>, as to Novus' arguments on his failure to plausibly allege receipt of an actionable "telephone solicitation" (*see* Dkt. 8 at 18-21), Plaintiff's Opposition tellingly ignores <u>all</u> of Novus'

10

cited authorities on this point, and yet argues that he has sufficiently pled that "Defendant placed at least four telephone calls to Plaintiff between October and December 2024 for the purpose of selling mortgage products." Dkt. 9 at 9. Not so. As the Motion shows, Plaintiff's Complaint offers no plausible facts, beyond his conclusory labels, about the content of any of the subject calls from which this Court could reasonably infer that they each meet the statutory definition of a "telephone solicitation" under the TCPA. *See* Dkt. 8 at 19 (citing Dkt. 1, ¶ 26 ("Plaintiff spoke with an agent who stated she was calling to sell a mortgage and was looking for 'Wayne Howard.'"); ¶ 29 ("The agent tried to sell Plaintiff a mortgage."); ¶ 34 ("The calls were made for the purpose of encouraging the purchase of Defendant's mortgage lending services")). Myriad courts have found that such allegations, which merely parrot the statutory text, are insufficient to plead this essential element of a DNC claim. *Id*. at 18-19 (collecting cases). This Court should rule similarly.

Plaintiff's few cited authorities on this front are distinguishable and do not compel a different result. *See* Dkt. 9 at 9-15 (citing *Bird*, *Kemen*, *Cribier*, *Soppet*, *Osorio*). In *Bird v. Pro Star Builders, Inc.*, for example, the plaintiff alleged far more than a conclusory allegation that the caller sought to solicit the defendant's services, and claimed *inter alia* that the caller provided him "with a quote," "set up an appointment with Plaintiff," and "a Pro Star employee appeared at his home and left his Pro Star business card with Plaintiff." 2022 WL 18216007, at *1 (C.D. Cal. Nov. 28, 2022). Plaintiff pleads no such facts in this case. In *Kemen v. Cincinnati Bell Tel. Co.*, "***no one dispute[d]*** that [plaintiff] spoke to a [defendant's] employee who encouraged her to purchase some good or service." *See* Case No. 1:22-cv-00152-DRC, S.D. Ohio, Dkt. 17 (emphasis added). That is not true here.

Plaintiff's Opposition cites to *Cribier, Soppet* and *Osorio* on this point, notes that the TCPA focuses only on whether the communication was transmitted to "any person" regardless of intended recipient, and argues that "only court to directly consider Defendant's precise argument rejected it

11

outright." Dkt. 9 at 12-13. However, Plaintiff ignores the *Dahdah* case cited in the Motion, where the court ruled differently. *See* Dkt. 8 at 20 (citing *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898, at *1 (Nov. 17, 2023) (dismissing, in part, on this basis where the subject calls were ill-described and "looking to speak with someone other than" plaintiff)). Moreover, Plaintiff ignores that other courts have reached the same logical, common sense conclusion as the court in *Dahdah* did. *See, e.g., id.* at 20-21 (citing *Murphy*, *Horton*, and *Norman*). In short, the Motion shows that the subject calls were supposedly intended for "Wayne Howard" confirms Plaintiff was not being solicited here, which further warrants dismissal of his entire Complaint. The Opposition does not refute this point.

Plaintiff's argument also conflates **who** received the communication with whether the **content** of communication itself qualifies as a "telephone solicitation." A communication responding to a prior inquiry from another individual, for example, is not magically transformed into an unsolicited "telephone solicitation" call merely because it reached the wrong number. *See e.g., Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016) (finding that calls made in response to an inquiry "[we]re not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service."); *see also* Dkt. 8 at 20, n. 5 (citing, *inter alia, Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1–2 (N.D. Ohio Jan. 26, 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA].") and *Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025) (holding that, although the communications at issue encouraged the plaintiff to utilize the defendant's free services, they were not "telephone solicitations" and were not a violation because the plaintiff was not "encouraged" to pay for them)).

In sum, the TCPA indisputably "is aimed [only] at calls that **directly** advertise [or, in the context of a DNC claim, directly solicit a purchase] and not 'calls that are related in some attenuated

way to advertising or telemarketing the caller intends to conduct in the future.'" *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (quoting *Knutson v. Blue Light Sec., Inc.,* 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)) (emphasis added). As Plaintiff did not properly allege receipt of such a "telephone solicitation" in this case, his entire Complaint fails.

**Second**, the Motion further demonstrates how Plaintiff's failure to allege *who* registered the phone number on which the alleged calls were received on the National DNC Registry further supports dismissal of Count I of his Complaint. *See* Dkt. 8 at 21-22 (citing *Rogers* and *Rombough*). On this point, Plaintiff's Opposition relies heavily on policy considerations and other non-binding decisions that do not alter the plain language of the governing regulation, which on its face affords a cause of action only to a "residential telephone subscriber *who has registered his or her* telephone number" on the Registry. *See* Dkt. 8 at 21 (quoting 47 C.F.R. § 64.1200(c)(2) (emphasis added)).

Plaintiff's attempts to misdirect the Court away from the plain statutory text and well-reasoned analysis of *Rombough* fail. As an initial matter, Novus never argued Plaintiff must prove the FTC maintains records identifying who registered the number or that he ultimately must produce such records to prevail on the merits, as the Opposition seemingly suggests. *See* Dkt. 9 at 20. Rather, Novus' argument on this front is simple, narrower, and rooted in ordinary pleading principles: because the governing regulation *expressly* applies only to a "residential telephone subscriber who has registered his or her telephone number" on the Registry, 47 C.F.R. § 64.1200(c)(2), Plaintiff must at least plausibly allege facts showing that he falls within that protected category. *See* Dkt. 9 at 20-21 (citing *Rogers*). Plaintiff's Complaint lacks such facts. His Opposition does not refute this.

Plaintiff's effort to dismiss this issue as "impossible to prove" misses the mark. The issue at this stage is not evidentiary proof; it is whether Plaintiff plausibly alleged this required element. He did not. Nor does Plaintiff's reliance on indefinite registration provisions resolve the issue. *See* Dkt.

13

9 at 22 (citing *Nichols*). The fact that DNC registrations remain active indefinitely says nothing about whether a later user of a reassigned number automatically acquires standing to sue under Section 227(c). The regulation, on its face, still ties the protection <u>only</u> to the subscriber "who has registered" the number. Plaintiff's interpretation improperly reads those words out of the regulation entirely.

Even if some courts have disagreed with *Rombough,* as Plaintiff notes (*see* Dkt. 9 at 21-22 (citing *Callier*, *Murch*, and *Nichols*)), the existence of contrary district court authority merely shows that this issue is unsettled—not that Novus' position is contrary to law, as Plaintiff seemingly suggests through citing the colorful language of the *Callier* case. Indeed, multiple courts have recognized the significance of the regulation's clear text, have properly applied statutory construction principles, and have dismissed complaints that failed to allege the plaintiff personally registered the at-issue number. *See, e.g.,* Dkt. 8 at 21-22 (citing *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023); *Rombough v. Robert D. Smith Ins. Agency, Inc*., 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022)). Plaintiff ignores *Rogers*, where the court reached the same well-reasoned conclusion as in *Rombough*. And contrary to what the court held in *Callier*, it is not a "nitpicky formality" for this Court to apply the plain language of the statutory text, which it is <u>legally required</u> to do under binding authority. *See* Dkt. 8 at 21, n. 6 (citing *Manning*).

In all, Plaintiff's arguments cannot override the plain language of the applicable DNC Registry regulation, which this Court is obligated to apply as written when ruling here, let alone obviate his bedrock obligation to plead actual facts in support of his claims under *Iqbal*/*Twombly*. Since Plaintiff does not demonstrate that he pled any facts suggesting that he himself registered the subject number on the Registry, Count I should be dismissed in its entirety on this additional basis.

**<u>Third</u>**, Plaintiff spends a significant portion of his Opposition in defense of his Caller ID claim under 47 C.F.R. § 64.1601(e), asserted in Count II of his Complaint. In this regard, the Motion

14

shows how the majority of federal courts that have analyzed this issue have correctly held that those regulations do <u>not</u> afford consumers a private cause of action. *See* Dkt. 8 at 22 (collecting cases). In response, Plaintiff's Opposition proclaims the Motion "relies on a line of authority" on this point "that has been squarely and repeatedly rejected by ***every court*** to examine the question closely over the past year." Dkt. 9 at 15 (emphasis added). Plaintiff is wrong. *See, e.g., Tom v. Delancey Street Group, LLC*, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026) (analyzing some of the same cases cited in the Motion on this front, and holding: "[T]his Court is persuaded by the ***majority approach,*** which finds there is ***no private right of action given § 64.1601(e)(1)'s silence on the matter***.") (emphasis added). These decisions are in alignment with the fundamental principle that courts should be reluctant to find a statutory private right of action in the absence of clear Congressional intent to create one. *See, e.g., Alexander v. Sandoval,* 121 S.Ct. 1511, 1520 (2001) ("Without [evidence of Congress's intent to create a private right of action], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). At bottom, Plaintiff's Opposition gives this Court no basis to go against the majority here.

**Lastly**, the Motion shows how the Complaint twice parrots the statutory text and baldly concludes that any TCPA violation was necessarily "willful" or "knowing" entitling him to treble damages, which courts have found to be insufficient to survive dismissal under *Iqbal*/*Twombly*. *See* Dkt. at 8 at 23 (citing Dkt. 1, ¶¶ 64, 71, *Canary* and *Lary*). On this front, Plaintiff argues that "courts require only that a party's actions were intentional, not that it was aware that it was violating the statute." Dkt. 9 at 23-24 (citing various cases). Even if that were the governing standard or reflective of the majority approach on this issue (and it is not), the Complaint lacks any such facts. Here, Plaintiff once again asks the Court to ignore *Iqbal*/*Twombly* and allow him to parrot the statutory text, rather than plead facts. While some courts may permit this, this Court should definitely not.

Dated: August 12, 2026

Respectfully Submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: */s/ A. Paul Heeringa*

John W. McGuinness*
A. Paul Heeringa
151 N. Franklin St., Ste. 2600
Chicago, IL 60606
Tel: 312.529.6300
pheeringa@manatt.com

Samantha J. Katze
7 Times Square
New York, NY 10036
Tel: 212.790.4579
skatze@manatt.com

**Counsel for Defendant**

*Admission to be requested*

16

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing document (including any attached exhibits and documents) to be filed electronically on the Court's CM/ECF docket on August 12, 2026 which served same electronically upon all counsel of record.

By: */s/ A. Paul Heeringa*

17